Ives *v.* Carter.

IVES *vs.* CARTER.

Where a fraud, in the sale of an interest in a co-partnership, was effected, in part, by means of a promise, (made by the vendor to the purchaser, at the time of the sale,) that if the plaintiff would purchase such interest at a stipulated sum, and "it should not turn out as represented, that he would make all right;" it was held, that the purchaser might sustain an action, either upon such promise, or for the fraud.

In an action on the case, by such purchaser, it was held, that the declaration was not objectionable, because it appeared, from it, that the plaintiff was entitled to either of said remedies.

Where, it was alleged, that relying on the false representations made by the defendant, the plaintiff purchased, and paid $1,500, for such interest, said partnership being then hopelessly insolvent, and indebted to the amount of $18,000, which it was unable to pay, by reason whereof the plaintiff assumed the defendant's liabilities, as a member of said firm, to said amount, which was to the damage of the plaintiff, in the sum of $10,000 ; it was held, that the declaration was not defective, because it contained no more specific allegations respecting the damages.

Where such declaration, among other allegations, averred that the defendant falsely represented that N. had offered, and stood ready to give, $1,500 for said interest in said co-partnership, and the court refused to comply with the request of the defendant, to instruct the jury that all the alleged representations, if proved to have been made, were not such as would sustain the plaintiff's action ; it was held that such course was correct.

The court, having instructed the jury on the trial, that, in estimating the plaintiff's damages, they might take into consideration his expenses in prosecuting his suit, it was held, that such instruction was correct.

The rule of damages, adopted by the court in the case of *Linsley* v. *Bushnell*, 15 *Conn. R.*, 225, approved.

THIS was an action of trespass on the case, tried before the superior court for the county of New Haven, in October, 1855.

The declaration alleged, that, " on the 15th day of January, A. D., 1852, the defendant was a member of a co-partnership company, then existing in the village of Plainville, in the town of Farmington, and doing business under the name and firm of Walter Barber & Company, the said defendant owning one quarter of the assets of said company, and being liable to pay one quarter of the debts of said company, so far as said defendants and the other members of

said co-partnership were concerned, and being liable to pay all the debts of said co-partnership, so far as the creditors of said co-partnership were concerned; that said company was engaged in manufacturing various articles, principally locks; that said company was then hopelessly insolvent; that it had sunk and lost its entire capital, amounting to $6,000, and was indebted to the extent of at least eighteen thousand dollars, a large part of which it was unable to pay, all which was well known to the defendant. And the plaintiff says that the defendant, in order to cheat and defraud the plaintiff, and to induce him to buy of the defendant, his, the defendant's interest in said company, and to take upon himself the defendant's liabilities, as a member of said company, did then falsely and fraudulently represent to the plaintiff, that he, the defendant, had just examined into the affairs of said company, and that said company were coming out first-rate, and much better than he, the defendant, expected; that said company had cleared over and above its expenses, a sum of not less than five thousand dollars; and that one Neil wanted to buy his, the defendant's interest in said company, and had just offered him fifteen hundred dollars therefor; that he was only prevented from selling to Neil, by his dislike to lose the profit that had then accumulated in the prosecution of said business; that said Neil had agreed to take said property, and would at any time, take said property and co-partnership interest off the hands of the plaintiff; and that as a further inducement to the plaintiff, and the more certainly to cheat and defraud him, knowing that the plaintiff had for nearly twenty years, from feelings of the purest friendship for the defendant, and without fee or reward, indorsed the notes of the defendant to the amount of many thousand dollars, and furnished him with capital for the purpose of enabling him, the defendant, to carry on business, at times, when the defendant had neither property or credit—he, the defendant did then falsely represent to the plaintiff, that he, the defendant, was in such urgent need of money, that he

must then fail unless he had immediately the sum of five hundred dollars in cash ; that if the plaintiff would purchase said co-partnership interest of the defendant, and pay defendant therefor the sum of fifteen hundred dollars, in case the said co-partnership affairs should not turn out as he represented, he, the defendant, would make all right; and the plaintiff says, that relying upon the aforesaid representations of the defendant, and for the purpose of assisting the defendant out of his alleged difficulty, and of maintaining the defendant's credit and business standing, believing it to be true that defendant would fail unless assisted by the plaintiff in the manner proposed, or in some other way, he did purchase defendant's interest in said co-partnership company, and did assume all defendant's liabilities as a member thereof, and did pay the defendant therefor, the sum of fifteen hundred dollars. And the plaintiff says that it was not true that said company was coming out first rate, and much better than defendant expected, or that it had cleared over and above its expenses not less than $5,000 ; or that said Neil wanted to buy said interest and had just offered defendant therefor the sum of $1,500, or that he (Neil) had agreed to purchase said property, and would take said property off the plaintiff's hands; or that said defendant was then in such a critical condition in his business, that he would have failed if he had not then obtained five hundred dollars ; or that defendant was willing to make all right in case the property did not prove as valuable as represented, all which was then well known to the defendant. And the plaintiff says that, by reason of said fraudulent and false representations, he was induced to assume defendant's said liabilities, as a member of said co-partnership, amounting to the sum of $18,000— all which is to the damage of the plaintiff the sum of ten thousand dollars, to recover which," &c.

On the trial upon the general issue, it was admitted that, at the time alleged in the declaration, the defendant was a member of the co-partnership of Walter Barber & Co., who

were manufacturers of locks at Plainville ; that their capital was $6,000, and the defendant the owner of one-fourth ; that at the time alleged, the defendant sold his interest to the plaintiff for the sum of $1,500, and received of the plaintiff payment therefor, in notes and other property, and conveyed the same to the plaintiff by a written instrument of conveyance, absolute in form.

The plaintiff offered evidence to prove, that during the negotiation, the defendant made the several representations set forth in the declaration; that they were false, and the defendant knew them to be so when he made them, and that he was induced by said representations to make the purchase, and but for them should not have made it; that he did not purchase the interest of the defendant in said company for the purpose of a business, or as an investment, but because the defendant represented, and he supposed truly, that Neil stood ready to take it for what it was worth when the inventory was completed ; and the defendant claimed to be in pressing need of money, and must have it, or fail, and the plaintiff was on his paper ; that all the negotiations were predicated on the idea that Neil would take the stock; that it was at the same time understood, that if the matter came out differently from what the defendant expected when the inventory was made, it was to be made right, and the plaintiff was to be made good by the defendant; and if more than $1,700 was realized, the plaintiff was to pay back the excess over that sum to the defendant; and that the difference between $1,500 and $1,700 was a compensation for prior endorsements and services rendered by the plaintiff to the defendant.

These claims of the plaintiff were denied by the defendant, who offered evidence to prove, and claimed he had proved, that no such representations were made ; that he supposed the company to be good, and had every reason to believe they were ; and that the sale was an open, honest and absolute one.

And it was admitted that the defendant had at all times, and when spoken to, or written to by the plaintiff, in relation to an adjustment, insisted that the sale was absolute, unconditional and honest.

Upon this part of the case, the defendant claimed and requested the court to charge the jury, that if they should find the contract of purchase to be as claimed by the plaintiff, it was not an absolute purchase as to the price and value, but was a conditional contract as to the price and value in which the plaintiff by the express terms of the contract, had" protected himself from loss, irrespective and independent of the truth, or falsity, of the alleged representations, and had his remedy upon the contract and could not recover in this action.

But the court did not comply with this request, but instructed the jury, that if the contract was a conditional one merely, and the plaintiff, in making the contract, relied upon a promise by the defendant to re-imburse him in the event of loss, and was not induced by the false representations of the defendant to make the contract, then he did not rely on the representations made to him in purchasing the stock, and was not deceived and was not entitled to recover. But on the other hand, whatever the form or nature of the contract, if fraudulent representations were in fact made, and were relied on by the vendee, in making the purchase as claimed, then the action could be maintained.

The defendant further claimed, and asked the court to charge the jury, that all the alleged representations, as set forth in the declaration, with the exception of the alleged representation " that said company had cleared over and above its expenses a sum not less than $5000," if proved to have been made, were not such representations as would sustain the action. The court omitted so to charge the jury, but instructed them as follows. To a certain extent the defendant was right in this claim, and unless the representations had immediate connection with the subject matter of the bargain,

and had relation to the quality and value of the property, they can not form the subject matter or ground of recovery, such as the declaration in relation to his want of $500;—which is evidence that you may consider in coming to the conclusion as to other facts, or as to motives, but such declarations, not being connected with the bargain, cannot be the subject matter of recovery in this action, but such as are found immediately connected with the bargain, and that relate to the quality or value of the stock, may be the proper ground of recovery. In order to sustain this action, it must be proved that the defendant has wilfully made representations, in connection with the sale of the stock of Walter Barber & Co., in regard to its quality and value, calculated to induce, and which did induce, the plaintiff to purchase the interest of the defendant, which representations were false when made and were then known to the defendant to be false.

On this point, the claim of the plaintiff is that the defendant represented that he had enquired into its affairs, which implies knowledge of what the real state of the company was. If the defendant there said that he had enquired into its affairs, the plaintiff had a right to presume that he had some knowledge of the situation of the company. The plaintiff claims that the defendant said that the company was coming out first rate, better than he expected; that it had cleared somewhere between $4000 and $5000; these were representations evidently connected with the quality and value of the stock. If he said I have examined it and have found it prosperous, there are $5000 of profits, the inferrence would be that it was worth that much above its capital. Another allegation is, that Neil would buy it for $1500—that he had offered $1500, and that the defendant did not want to sell it because he would lose his portion of the profits, and that Neil would at any time take it off his hands.

If you find these representations were made, in my opinion, they form a sufficient substantive ground for recovery.

It was proved and not denied, that within a few days after the purchase, by the plaintiff, of the defendant's interest, in said firm of Walter Barber & Co., said firm completed their inventory, by which it appeared that the assets of said company amounted to  -    -    -    -    -    $25,024.04
Their liabilities, not including capital stock, to   21,627.52

           Showing a surplus of                    3,396.52.

By this it appeared that the defendant's interest in said firm, as shown by said inventory, was  $849.13, or $650.87 less than $1,500.  And it was also in evidence shown, that many of the articles were inventoried at a price above their value, for any purpose except continued use in the business, and that this result then and there became known to the plaintiff.

It was further proved and not denied, that, after the purchase by the plaintiff of the defendant's interest as aforesaid, and after his knowledge of the result of said inventory, the plaintiff continued the business with the other remaining partners of said firm of Walter Barber & Co., under the same copartnership name, and so continued from Jan. 8th, 1852, to Sept., 1852, when said firm became insolvent by reason of the defalcation of an agent, and the plaintiff, to relieve himself from his liabilities as partner in said firm, was obliged to pay, and in fact did pay, the sum of $3,000, in addition to his interest in the firm, to be discharged from his liability.  And there was no evidence that the plaintiff gave to the defendant any indemnity against, or became obligated to pay the debts of the old firm.  And the plaintiff claimed to recover the entire price paid, together with the sum of $3,000, so lost in the business.

And the defendant, upon this part of the case requested the court to charge the jury, that the defendant could not be held responsible for the losses, which accrued to the plaintiff by reason of his liability as partner in the new firm, nor for the debts of the old firm, for he was under no obligation to

assume them, and that if they should find the contract of purchase to have been as claimed by the plaintiff, the rule of damages, under the contract as claimed, must be the difference between $1,500, and $849.13, the amount of the defendant's interest as determined and found by the inventory, with interest on the same.

But the court, upon this claim of the defendant, instructed the jury as follows:

The defendant claims that inasmuch as the plaintiff was not responsible, personally, for the previous debts of the firm, and it was at his election whether he assumed the liabilities or not, the defendant is liable only for the share of the actual deficiency which then existed in the partnership property, which it is claimed is $2,600. I do not know any other rule to apply in this action than to enquire what was the value of the interest at the time of the purchase. It is true the plaintiff was not liable for the previous debts—(the property was liable)—unless he gave an indemnity. It is true the plaintiff might close it and wind up the concern.

It is claimed, however, on the part of the plaintiff, that he bought the property of the partnership with the understanding that it should continue, and that such was the arrangement.

I think when he understood that he had been deceived, and that the property was not as represented, if he intended to hold the defendant for any thing more than the difference between the price paid and the actual value of the partnership, as it then stood, he should have taken a different course, and given notice to take back the property on that ground. But, as he elected to go on and met with further losses in consequence of the defalcation of the agent, the true rule is to enquire what was the value of the stock, whether it would have brought any thing in the market, and what would have been the result if the plaintiff had elected to have dissolved the co-partnership, and wound up its affairs; perhaps you can judge from other circumstances what would be the

result; you will enquire whether there was any sale of it, and what he could have got for it. If he could have got nothing for it, then you will enquire what it would be worth, considered as an investment, if wound up and the debts paid. If it is worth anything, the rule will be, what was the deficiency over and above what it was then worth. You will find what was the actual value of the interest at the time the plaintiff bought, and the difference between that and the price paid, and you may also take into consideration, the expenses to which the plaintiff has been subjected in the prosecution of this suit.

The jury returned a verdict for the plaintiff.

The defendant thereupon filed a motion for a new trial, on the ground of a misdirection, and because the court omitted to charge the jury as requested by him.

The defendant also moved in arrest of judgment, on the ground of the insufficiency of the declaration.

*N. J. & T. S. Buell,* and *Wooster,* in support of the motions.

I. The declaration is insufficient, because, 1. It appears that none of the alleged representations were relied upon by the plaintiff, as to the value or quality of the property sold, inasmuch as the sale, and purchase was consummated upon the contract and agreement of the defendant, that he would make good all differences from the representations. 2. There is no averment in the declaration that the defendant has not made all right, if any thing was wrong; has ever been requested, or has ever refused so to do. 3. There is no averment that the plaintiff has sustained any loss, or damage, by reason of anything alleged in the declaration nor are there any allegations that, by means of the defendant's representations, he has sustained damage and how or in what manner. This must be alleged and proved, the *ad damnum* clause is not a sufficient averment. 2 Barb., S. C. R., 525. 4 B. & C., 345. 12 East. R., 632. 23 Conn. R., 86–134. 16 Johns.

R., 122. 1 Chit. Pl., 397. 6 Taunt. R., 522. 2 Chit. Pl., and 2 Sw. Dig., 1 Sw. Dig. 567. 4. The averment that the plaintiff was induced to assume the liabilities of the defendant &c., is not accompanied by any averment that he has ever paid them ; that the assets of the company were not amply sufficient to meet them, or that he has been in any way damnified thereby. The fact that he was induced to do this, in the absence of all averments to that effect, is no averment of any damage resulting therefrom.

II. The court erred, in its instructions to the jury, upon the claim of the defendant, that, if the contract, as claimed by the plaintiff, was a conditional one, as to the price in which the plaintiff, by the terms of the contract had protected himself from loss, irrespective and independent of the truth, or falsity, of the alleged representations, he could not recover in this action.

III. The court erred, in omitting to instruct the jury, as claimed by the defendant, that all the representations alleged in the declaration, with the exception of the following, "that said company had cleared over and above its expenses, a sum not less than $5000," if proved to have been made, were not such representations as would sustain the action,—and in instructing them, as set forth in the motion. 2 Steph. N. P., 1281. 5 Johns. R., 354.

IV. The court erred in its instruction to the jury, as to the rule of damages, and in omitting to charge them as requested by the defendant.

*Blackman*, and *C. Ives*, contra.

1. A good cause of action is sufficiently alleged in the plaintiff's declaration. " The telling an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition in consequence, whereby he sustains damage, fulfils all the requisites to support an action of deceit." 7 Eng. L. & E. R., 585. " The common law recognizes the broad principle

that whoever does any deceit, to the damage of another, is liable to an action." 1 Sw. Dig., 567. 7 Cranch., 69.

2. The plaintiff had his election to proceed against the defendant for the fraud, or upon the contract. If contaminated by fraud, the insertion of a condition in a contract does not absolve the wrong doer, or deprive the injured party of his most effective remedy. The contract in this case was so far executed, that the plaintiff had paid the consideration, and parted with $1500 of his money, and it was so far unconditional, that, on the plaintiff's part, at least, it was executed, and he had been defrauded of his money.

3. Unless the representations, made by the defendant, had immediate connection with the subject matter of the bargain, and had relation to the quantity and value of the property, we admit that they could not form the subject matter or ground of action, as was said by the judge at the trial. But evidence was clearly admissible to show the *quo animo* with which the defendant spoke of the value of the property, and falsely stated, among other things, that the company had cleared, over and above its expenses, a sum, not less than $5000. This was not property purchased upon sight and susceptible of examination. *Risney* v. *Selby*, Salk., 211. *Benton* v. *Pratt*, 2 Wend., 385. *Sanford* v. *Handy*, 23 Wend., 260. *Gerhard* v. *Bates*, 20 E. L. & Eq. R., 129. *West* v. *Anderson*, 9 Conn. R., 107. 2 M. & W., 519. 4 M. & W., 337. 6 Cow., 346. 12 East., 637. 18 Pick., 95.

4. In actions for redress against fraud, it is not understood that any exact rule of damages has been prescribed in Connecticut, or that our courts have ever limited the jury, in their verdict, to the dollars and cents, fraudulently filched from the innocent party, with six *per cent.* interest upon that sum, from the time of perpetrating the fraud, but the most charitable rule which the defendant could ask was that prescribed by the judge.

HINMAN, J. The first question in this case arises on the motion in arrest, for the insufficiency of the declaration. The

declaration is claimed to be defective, because it appears from it, that the fraud, or deceit, was in part effected by means of a promise made by the defendant, at the time of the sale, that if the plaintiff would purchase the property at the sum of fifteen hundred dollars, and it should not turn out as he represented, he would make all right. The claim is, that the action should have been upon this promise, and not for the fraud in the sale. The objection is not that the plaintiff was not defrauded, but that, inasmuch as there was connected with the fraud a false and deceitful promise, therefore, the plaintiff must resort to the promise for his remedy.

We know of no principle that requires us to sanction this claim. In a case thus situated, it appears to us, that the party may have his election to sue either upon the contract, or for the fraud; and in either case, so long as it appears that the party is entitled to the remedy he has selected, it can be no objection to the declaration, because it appears from it, that he was also entitled to another remedy.

It is further claimed that there is no sufficient allegation of loss or damage, to justify a recovery. The declaration alleges, that the defendant was the owner of one fourth part of certain partnership property, and a member of the copartnership; that the copartnership was hopelessly insolvent, having lost its entire capital, and being also indebted to the amount of eighteen thousand dollars, all which was well known to the defendant; and, in order to induce the plaintiff to purchase of him his interest in said copartnership, and property, he represented its affairs to be prosperous, that it had cleared over its expenses not less than $5000; that one Neil wanted to buy his interest, and had offered him $1500 for it, and stood ready at any time to take it off the plaintiff's hands, if he purchased it;—that he would make all right, if the plaintiff purchased it and it did not turn out as represented. It further appears from the declaration that, relying on these representations, the plaintiff did purchase, and pay $1500 for the defendant's interest in this copart

nership, and its property, by reason whereof he was injured &c. General damages, which are such as the law presumes from the wrong complained of, need not be specially pleaded, because the law presumes them ; and presumptions of law need not be pleaded. *Steph. on Pl.*, 354. It is alleged that the copartnership was hopelessly insolvent, having lost its entire capital, and was also indebted to the amount of eighteen thousand dollars; as property, therefore, it was worthless, and the plaintiff has, of course, lost his $1500 which he paid for it. To this extent it seems to be clear that the declaration shows an injury ; and as this is more in amount than the verdict gives him, we need not consider whether he could, under the declaration, recover for the liabilities he was afterward induced to incur on account of the debts of the partnership. We think the motion in arrest cannot prevail.

There is also a motion for a new trial, on the ground of error in the charge to the jury. The defendant requested the court to charge the jury, that if the contract was as claimed by the plaintiff, it was a conditional contract as to the price and value of the property, by the terms of which the plaintiff had protected himself from loss, irrespective of any fraud, and, therefore, he could not recover in this action. This has reference to the proof that went in support of that part of the declaration, in which it is alleged that, at the time of the defendant's making the representations which were claimed to be false and fraudulent, he also stated that, if the plaintiff would purchase his interest in the copartnership, and the property belonging thereto, and it should not turn out as he represented, he would make all right. In substance, therefore, it is the same question which is made in another form, under the motion in arrest, and has been answered in what has been said as to the sufficiency of the declaration. The claim is founded upon the idea that there can be no actionable fraud, as to the quality, or value of property sold,

Ives *v.* Carter.

where there is a binding contract, which is sufficient to protect the purchaser against such fraud.   As no authority is cited in support of the proposition, and it does not appear to us to be founded in, or supported by, any sound reason, we cannot sanction it.   Where fraud has operated to the injury of a party, it does not seem to be a good answer to an action for it, for the defendant to say, that, as he promised to make good any injury resulting from it, therefore he ought not to be sued for it, in the action usually brought for such an injury. In *Wallace* v. *Jarman*, 2 Stark., 163, 3 E. C. L., 295.  Lord Ellenborough held that the purchaser of a warranted but worthless watch, might maintain an action for the deceit, although there was a stipulation that, if he disliked it, he might exchange it for one of equal value; and there are many cases where a party may sue for fraud, or on a contract.

The court refused to charge the jury, that all the representations set forth in the declaration, except that in respect to the amount which the company had cleared, were not such as would sustain an action.  This is complained of.  But we think the representation, as to what Neil had offered, and stood ready to give, and take the property off the plaintiff's hands, if he purchased, was directly calculated to affect the value of the property; *Risney* v. *Selby*, Salk., 211.  *Benton* v. *Pratt*, 2 Wend., 385.   And if any one of the other representations is sufficient to support an action, the claim is obviously unfounded.

The court charged the jury that, in estimating the damages, they might take into consideration the plaintiff's expenses in prosecuting the suit.   It is apparent that the rule adopted in *Linsley* v. *Bushnell*, 15 Conn. R., 225, sustains this part of the charge; and certainly there is no class of cases to which it can more appropriately be applied, than to cases of actual fraud, by means of false representations in respect to the quality of property sold.   Upon the whole,

therefore, we advise that the motion in arrest be overruled, and that a new trial be denied.

In this opinion, the other Judges, STORRS & ELLSWORTH, concurred.

New trial not to be granted.