A serious, painful and permanent dislocation of her left shoulder is said by the plaintiff to have followed an unwarranted and unprovoked assault upon her by the defendant. By way of justification, the defendant has countered with the claim that the plaintiff initiated the incident by assaulting him and that he, in self-defense, "necessarily pushed the plaintiff a little, doing her no unnecessary harm."
The events leading to the plaintiff's injury concerned themselves wholly with the disputed ownership of an unprepossessing mongrel, which had either wandered or been brought into a tenement building wherein the plaintiff and defendant occupied apartments. The plaintiff insists that she purchased the dog some weeks before the assault; the defendant contends that the unlicensed stray animal followed his housekeeper's youngster into their home and that thereafter he and members of his family gave it food and care. Be that as it may, the dog, after its arrival in the neighborhood, shared its affections with both the plaintiff and the defendant, electing to spend a portion of its time in the household of each.
Without attempting to resolve the moot question of ownership, it is apparent that on the evening of October 6, 1943, at approximately six o'clock, the dog was in the custody of the plaintiff, who was then sauntering about her yard or an adjoining driveway. The defendant, desiring to retrieve the animal, came from his apartment and started toward the plaintiff, whereupon she gathered the dog to her arms.
There is no doubt but that the defendant, intent upon accomplishing his mission, struggled with the plaintiff, causing her to lose her balance and fall upon a sizable concrete block. When the contrasting facts are considered, showing, *Page 446 
as they do, the plaintiff to be a short stocky woman, 53 years of age, and the defendant, a rugged, vigorous male of 34 years, employed as a concrete mixer, it is not difficult to visualize excessive force on the part of the defendant. In a civil action for assault and battery, the trier has a right to consider the disparity in size of the respective parties. Bogudskivs. Backes, 83 Conn. 208, 213.
Even if it be assumed, for the sake of analysis and argument, that the dog was the property of the defendant, it cannot be said that his actions were those which a reasonable man would deem proper. Arlowski vs. Foglio, 105 Conn. 342,349, is authority for the proposition that one may lawfully enter upon the land of another to recover his goods if they were wrongfully taken and put there by the other; and, in so doing, he may take such precaution against the known dangers involved in such entry as a reasonable man would deem proper. Surely this standard of reasonableness was not met by the defendant as he entered the plaintiff's yard or driveway, since the existing conditions neither warranted nor justified resort to any physical force, much less the excessive force which was brought into play.
The defendant's claimed justification of self-defense is not supported by the evidence. His narrative of the occurrence runs in the following fashion: "I figured I wasn't going to let her keep the dog because I had fed it for seven weeks. I went down to her house and met her at the driveway. I asked her for the dog and she refused. I tried to take the dog out of her arms, and I grabbed her around the neck. She squirmed out of my hands and fell over a concrete block. After she got up she ripped my shirt and struck at me several times with a long dog chain." Even this self-serving story, which does not tell the entire tale concerning the force exerted by the defendant, negates any claim of self defense. It obviously marks the defendant as the aggressor. In an action for assault and battery, the defendant assumes the burden of proving a justification alleged in his answer. Levidow vs.Starin, 77 Conn. 600.
The experience resulted in an atrophy of the muscles of the plaintiff's shoulder girdle with a permanent residue of 25 per cent loss of use of the left shoulder. An immediate diagnosis was that of an anterior dislocation of the humerus, requiring anesthesia preparatory to a reduction of the dislocation. *Page 447 
Thereafter the shoulder was immobilized, continuing until October 28, 1943, when, until mid-December, physiotherapy treatment was utilized. The plaintiff, a machine operator at the time of the assault, was forced to absent herself from employment for a two-month period. She continues to experience pain despite the passage of six months. The maximum improvement, which can be expected, has been observed.
 The special damage fairly proved by the plaintiff totals $324. Just and reasonable compensation for her injury and its permanent effects is $700. Therefore, judgment may enter for the plaintiff to recover of the defendant $1,024 and costs.