NORMAND MANNING v. JACK MICHAEL
(11373)

SPEZIALE, C. J., HEALEY, PARSKEY, SHEA and GRILLO, Js.

608

Argued October 13—decision released December 7, 1982

*Averum J. Sprecher,* for the appellant-cross appellee (defendant.)

*Elizabeth Allen,* for the appellee-cross appellant (plaintiff).

GRILLO, J. This appeal from a judgment in an action for assault and battery raises the following issues: (1) whether the court erred in prohibiting the defendant from examining two of the plaintiff's witnesses as to their mental competency and capacity to testify; (2) whether the court erred in failing to require the plaintiff to prove nonprovocation where the plaintiff rather than the defendant had pled it as an allegation of his complaint; (3) whether the court erred in awarding the plaintiff $5000 in damages where only $336 of that sum represented medical expenses which was the amount of his special damages; (4) whether the court erred in failing to render judgment in favor of the defendant on his special defense and counterclaim; (5) whether the court erred in failing to award punitive damages to the plaintiff.

The trial court found the following facts which are supported by the evidence: On the morning of June 6, 1978 the plaintiff was planting laurel bushes on a strip of land bordering a public road which faces, on the opposite side of this road, a junkyard and auto parts business owned by the defendant. Over the years the defendant has used the strip for parking in conjunction with his business, much to the consternation of several previous owners and the present plaintiff.[1] Previous attempts by these owners to prevent the unauthorized use of the strip, including erecting a fence and a "No Parking" sign, failed to prevent its use by the defendant and his business customers. The laurel planting, clearly another attempt to deter the defendant from utilizing the strip, became the catalyst for the altercation which followed.

On the morning in question, the defendant, viewing the planting, ordered the plaintiff to stop. When words proved ineffective, the defendant crossed the street and uprooted the laurel, subsequently returning to his side of the road. The plaintiff thereafter planted a second bush, and the defendant repeated his actions. After remarking that the defendant's actions would not deter him, the plaintiff began walking away, carrying his shovel. The defendant, wishing to settle the issue, ran after him, and, as the plaintiff turned to face the defendant, the plaintiff's shovel brushed the defendant. The defendant subsequently pushed the plaintiff to the ground and struck him repeatedly about the face and ears.

The plaintiff instituted the present action for assault and battery on December 11, 1978. In addi-

---

[1] The owner of the disputed strip is Spitals, an abutting neighbor of the plaintiff. The plaintiff had helped the Spitals in the past in their attempts to prevent parking on the strip.

tion to denying the allegations of the complaint, the defendant pleaded self-defense and filed a counter-claim[2] alleging malicious assault and battery. After a trial of approximately eight and one-half days, the trial court ruled for the plaintiff on all issues, from which the defendant appeals. Additionally, the plaintiff has cross appealed, maintaining that he pleaded and proved punitive damages.

The defendant's first assignment of error concerns the propriety and scope of challenges to a witness' competency upon cross-examination. "The incompetency of a witness is determined at the time he is offered, or, if the ground of incompetency is discovered during the trial, upon objection promptly made at that time." (Footnotes omitted.) 81 Am. Jur. 2d, Witnesses § 139, p. 180. Another authority states that "[t]he competency of witnesses is a preliminary question of fact for the court. [Citations omitted.] Challenges to competency must be made when the witness is first sworn if the grounds are then known, otherwise as soon as the grounds become evident. . . . [The objector] is allowed to examine the witness and offer other proof." Tait & LaPlante, Handbook of Connecticut Evidence § 7.11, p. 86.

Following the direct examination of the plaintiff's witness Thomas Reed, the defendant questioned Reed relative to whether he was undergoing psychiatric treatment. After receiving an affirmative answer the defendant attempted to question him further on his "competency to testify as a witness," but was precluded by the trial court. Defense

[2] Although the defendant refers to his pleading as a cross complaint, because he is claiming against the plaintiff and not a codefendant, the proper terminology is counterclaim. Practice Book §§ 116, 168.

counsel stated that he first became aware that the witness had mental problems on the evening of the day Reed testified on direct examination.[3]

While it is recognized that the competency of a witness is a matter peculiarly within the discretion of the trial court; *State* v. *Rodriguez,* 180 Conn. 382, 389, 429 A.2d 919 (1980); it is clear that under the circumstances the trial court was in no position to exercise that discretion since the defendant's attempt to test the witness' competency was denied. After hearing the relevant testimony the court should have considered " 'the proposed witness' maturity to receive correct impressions by his senses, ability to recollect and narrate intelligently, and ability to appreciate the moral duty to tell the truth . . .' "; *State* v. *Piskorski,* 177 Conn. 677, 715, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); and thus determined whether the witness was competent to testify.

The court, therefore, erred in excluding the questions concerning Reed's competency. In order to constitute reversible error, however, the ruling must be both erroneous and harmful. *State* v. *Annunziato,* 169 Conn. 517, 524, 363 A.2d 1011 (1975). The burden of proving harmful error rests on the party asserting it; *State* v. *Dolphin,* 178 Conn. 564, 571, 424 A.2d 266 (1979); and the ultimate question is whether the erroneous action would likely affect the result. *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976). In the present case other witnesses testified about the earlier problems with the fence

---

[3] Direct examination of Reed was conducted on October 19, 1981, while cross-examination was conducted on both October 19 and 21, 1981. The defendant's brief indicates an interruption in the trial because of the reassignment of the trial judge to another judicial district.

and the defendant's aggressive tendencies, which were the substance of Reed's brief testimony. *State v. Piskorski,* supra 726. Moreover, the testimony of Reed, while supplying background information, was not cardinal to the central issue in the case. See *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 717, 345 A.2d 563 (1974). Under these circumstances, therefore, the court's ruling, although erroneous, was harmless.

Ronald Witzman, a former state trooper, testified as to the defendant's reputation for truth and veracity which he classified as "poor." After a searching cross-examination of the witness by defense counsel in an attempt to debilitate his testimony regarding the defendant's reputation, counsel attempted to elicit responses to indicate that Witzman had left the state police department because of emotional problems. Upon objection, defense counsel claimed the question on the ground of competency to testify. The objection was sustained as irrelevant. No objection was made to Witzman's competence during his direct testimony. The piecemeal transcripts indicate that only after cross-examination relative to the direct testimony did defense counsel question Witzman's capacity to testify.[4] It was too late at that time to interrogate regarding a subject of which the defendant was obviously aware prior to the witness' being sworn. Tait & LaPlante, supra, § 7.11, p. 86. There is no indication, unlike the circumstances surrounding defense counsel's last-minute acquisition of knowledge concerning Reed's competency, that the defendant had just learned of the claimed emotional prob-

---

[4] Although only portions of Witzman's testimony are available for review by this court, upon cross-examination the defendant's counsel first attempted to denigrate the substance of Witzman's direct testimony, thereafter turning to an attack upon his competency.

lem. Indeed, one can glean from the proffered questions regarding the witness' alleged emotional problems that the information forming the basis of the questions was well known by defense counsel. To countenance this procedure would be to sanction a tactic whereby a litigant could cross-examine a witness and then, sensing that his cross-examination did not effectively weaken the direct testimony, raise the issue of noncompetency—trial by ambuscade. Had the question of competency been advanced at the proper time by defense counsel, an inquiry could have been conducted via voir dire relative to that issue.[5]

The defendant attempted to justify the propriety of the question on the basis that competency and credibility are interwined and that therefore the question was admissible on the ground of credibility. Evidence relating to competency would also affect credibility. The plaintiff, in objecting, remarked that the nature of the inquiry was an attempt to embarrass the witness and suggested that if "lurid" things were to be divulged, a conference should be held in chambers.

The trial judge's general control over cross-examination and the issue of credibility allows him to exercise his discretion as to whether to exclude a question of this nature. The judge's determination must be made according to reason and judicial experience, and every reasonable presumption

---

[5] While Practice Book §§ 305 and 848 refer to the conduct of the voir dire relating to the questioning of veniremen, we take judicial notice of the fact that such preliminary examination is also appropriate in other matters involving such subjects as qualifications of experts, authenticity of documents or exhibits and similarity of conditions. Tait & LaPlante, Handbook of Connecticut Evidence § 3.4 (e) (3), p. 23.

should be given in favor of the correctness of the court's ruling. *State* v. *Moye*, 177 Conn. 487, 501–502, 418 A.2d 870, vacated, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 410 A.2d 1011 (1979). In foreclosing the line of inquiry initiated by the defendant, the court properly exercised its discretion, and its ruling was correct.

The defendant next assigns as error the failure of the trial court to require the plaintiff to sustain the burden of proof as to provocation where non-provocation was alleged by the plaintiff. He contends that it was the plaintiff's burden to prove nonprovocation as a condition precedent to recovery. The plaintiff responds by asserting that from the failure of the court to address this issue in its memorandum it may be inferred that the question of provocation played no part in the court's award of damages.

In support of his position, the defendant cites *Boyd* v. *Geary*, 126 Conn. 396, 12 A.2d 644 (1940), and *Grecki* v. *New Britain*, 174 Conn. 200, 384 A.2d 372 (1978). In *Boyd* the plaintiff alleged that plaintiff's decedent was in the exercise of due care. *Boyd* v. *Geary*, supra, 398. The controlling statute provided that when the injured party died prior to trial it is presumed that he was in the exercise of due care, and for contributory negligence to be a viable defense it must be pleaded and proven by the defendant.[6] Id. The *Boyd* court concluded that where the plaintiff affirmatively alleged lack of contributory negligence he concomitantly waived the

---

[6] The statute currently in effect enlarges the due care presumption to include persons who suffer personal injury or property damage. General Statutes § 52-114.

due care presumption under the statute and therefore assumed the burden of proving his decedent's exercise of due care. Id., 399–400.

In *Grecki,* the court noted that under the applicable statute, § 52-114, a plaintiff in a negligence action is ordinarily entitled to a presumption of due care and the burden is on the defendant to prove contributory negligence. *Grecki* v. *New Britain,* supra, 201–202. As in *Boyd,* the court stated that since the plaintiff affirmatively alleged due care, the burden of proving due care and freedom from contributory negligence fell upon the plaintiff. Id., 201–203. However, in *Boyd,* a finding of contributory negligence (under the law prior to the adoption of comparative negligence) would have barred recovery, while in *Grecki,* it would have either barred recovery or diminished the percentage of recovery under the comparative negligence statute. General Statutes § 52-572h.

Citing *Boyd* and *Grecki,* the defendant insists that the plaintiff, having cast upon himself the burden of proving a negative, nonprovocation, and since this was a material allegation of the complaint neither addressed nor found by the trial court, is precluded from recovery. He asserts that proof that the assault was not provoked by the plaintiff is a condition precedent to recovery, and that failure so to prove by a preponderance of the evidence relieves the assaulter of liability. The defendant fails to recognize that in *Boyd* and *Grecki* the assumed burden of due care, if not sustained by the plaintiff, went to the heart of the defendant's claim of nonliability, whereas in the instant case the issue of provocation relates only to the question of damages and not to liability. Provocation is a

proper defense to a punitive damage claim. *Chykirda* v. *Yanush,* 131 Conn. 565, 566, 41 A.2d 449 (1945). A finding of provocation does not justify an assault, but merely limits liability to actual damages sustained. *Morache* v. *Greenberg,* 116 Conn. 549, 551, 165 A. 684 (1933); *Burke* v. *Melvin,* 45 Conn. 243, 246 (1877). Contrary to the defendant's claim, the averment of nonprovocation was not material to the plaintiff's cause of action. Moreover, where, as here, the trial court did not award punitive damages, the provocation issue becomes academic.

The attack by the defendant on the trial court's award of $5000 to the plaintiff is without merit. The defendant bases his argument on the fact that only $336 of that sum represented medical expenses. That incurred medical expenses represent only a small percentage of the award for damages does not, ipso facto, invalidate the award. The award of damages for pain and suffering is peculiarly within the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice. *Camp* v. *Booth,* 160 Conn. 10, 12–13, 273 A.2d 714 (1970). Proper compensation cannot be computed by a mathematical formula, and there is no iron-clad rule for the assessment of damages. *Lee* v. *Lee,* 171 Conn. 1, 4, 368 A.2d 11 (1976). The process of evaluation is one of apportionment depending largely upon the sound discretion of the trier. *Kekac* v. *New York, N.H. & H. R. Co.,* 149 Conn. 731, 732, 179 A.2d 832 (1962). The test is whether the amount awarded, aside from medical expenses, " 'falls within the necessarily uncertain limits of just damages . . . .' " *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 349, 422 A.2d 260 (1979).

Viewed within these guidelines, we cannot construe the award as excessive. The trial court found that the plaintiff was repeatedly beaten and as a result suffered immediate bruising, swelling, dizziness and temporary hearing loss, as well as various residual problems including lethargy, depression, headaches, stomach pains and nervousness. The record amply supports these conclusions. Moreover, the trial court properly considered the disparity in age and physical ability between the parties. The defendant is almost ten years younger than the plaintiff and formerly trained as a boxer. *Valek* v. *Ballaro,* 12 Conn. Sup. 444, 446 (1944). We therefore conclude that the record before us adequately supports the trial court's award.

The defendant further asserts that the paucity of pleadings by the plaintiff does not support the award of damages beyond medical expenses. While we note that the plaintiff's complaint is inordinately brief, the record does not reveal a request to revise by the defendant. Practice Book § 147. Moreover, it has long been recognized that "[g]eneral damages, which are such as the law presumes from the wrong complained of, need not be specially pleaded, because the law presumes them . . . ." *Ives* v. *Carter,* 24 Conn. 392, 404 (1856). "Pain and suffering, the obvious consequences of a serious injury, are elements of damage and need not be specially alleged." *Gervais* v. *Foehrenbach,* 149 Conn. 461, 464, 181 A.2d 253 (1962).[7]

[7] The defendant makes the additional claim that the court impermissibly included as an element of compensatory damages the plaintiff's pain and suffering resulting from the defendant's efforts, in the years prior to the altercation between the parties, to obtain control of the disputed strip. Although in its memorandum of decision the court delineates the historical dispute over the property

Little need be said relative to the defendant's claim that the court erred in failing to render judgment in favor of the defendant on his special defense and counterclaim. With respect to the claim of self-defense, the trial court found that as the plaintiff was leaving the strip carrying his shovel, he turned to face the defendant who was running at him. In so doing, the shovel brushed against the defendant. Obviously the court believed and was justified in concluding, implicitly, that the contact was an inadvertent consequence of the plaintiff's turning toward his assailant and that there was no intent to injure the defendant. This conclusion is adequately supported by the testimony of the two eyewitnesses, neither of whom suggested any aggressive actions by the plaintiff. The trial court properly concluded that the defendant failed to meet his burden of establishing that he acted in self-defense.

The trial court's conclusion with respect to the self-defense claim effectively disposes of the defendant's counterclaim as well. The inadvertent nature of the contact by the plaintiff, as recited above, cannot reasonably be deemed to have constituted an intentional or malicious assault upon the defendant.

With reference to the cross appeal, the plaintiff argues that he pleaded and proved a claim for punitive damages and was therefore erroneously denied exemplary relief. The crux of his position

---

in order to clarify the foundation for the current altercation, we do not read this background information as in any way influencing the award. Indeed, the court specifically concludes that the plaintiff experienced pain and suffering as a result of being assaulted and battered.

is that the mere assertion in the complaint that the defendant assaulted the plaintiff with his fists about the head without provocation entitles him to punitive damages. The trial court rejected the claim that the allegations in the complaint were sufficient to implicitly or inferentially alert both the court and the defendant that exemplary damages were being pled and sought. We agree.

In his complaint, a paradigm of brevity,[8] the plaintiff merely seeks "damages." Even a statutory provision allowing "just damages" has been construed to mean simply compensatory rather than punitive damages. *Laznovsky* v. *Furdanowicz,* 22 Conn. Sup. 297, 301, 170 A.2d 734 (1961). Conversely, exemplary damages, as an extraordinary remedy, require delineation within the pleadings of wanton or wilful malicious conduct; *Nair* v. *Thaw,* 156 Conn. 445, 452–53, 242 A.2d 757 (1968); *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 128, 222 A.2d 220 (1966); as well as evidence showing such intentional and wanton misconduct. *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978). Even assuming, arguendo, that the evidence shows such a reckless disregard for the plaintiff's rights, the complaint failed to employ language sufficiently explicit to inform the court and opposing counsel that punitive damages would be sought. *Kostiuk* v. *Queally,* 159 Conn. 91, 93–95, 267 A.2d 452 (1970). Although the plaintiff requested an eleventh-hour amendment at trial to plead exemplary damages, the trial court acted within its discretion in denying a motion to amend

---

[8] The entire complaint consisted of four one-sentence paragraphs.

pleadings made approximately three years after service of the complaint. *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971).

There is no error.

In this opinion the other judges concurred.