JAMES SANTAMARIA ET AL. *v.* ROBERT MANSHIP ET AL.
(3506)

JAMES SANTAMARIA ET AL. *v.* WILLIAM LENNON ET AL.
(3507)

HULL, SPALLONE and BIELUCH, Js.

538

Argued February 10—decision released June 3, 1986

*Richard P. Weinstein,* with whom, on the brief, was *Ronald T. Murphy,* for the appellants (plaintiffs in both cases).

*Thomas J. Keramidas,* with whom was *Robert J. Papp,* for the appellees (defendants in each case).

BIELUCH, J. These two actions, consolidated in the trial court and on appeal in this court, arise out of a property dispute between the plaintiffs, James and Lucy SantaMaria, and the defendants,[1] who, along with

---

[1] In *SantaMaria* v. *Manship,* (3506), the defendants are Robert Manship, Muriel Manship, William Lennon, Joseph Ciampa, Jeanette Ciampa, Donald Vigneau, Rita Vigneau, Dorothy Wally and Louise Donovan. In *SantaMaria* v. *Lennon,* (3507), the defendants are William Lennon, Robert Manship and Joseph Ciampa.

the plaintiffs, are long-term lessees of land and owners of beach cottages thereon at Latimer Point in Stonington. The property at issue is a twenty-five foot wide strip of land adjacent to the lot leased by the plaintiffs and which runs from a private road for a distance of 93.75 feet to Long Island Sound. The plaintiffs have long asserted that neither vehicles nor pedestrians are to be permitted to use "their one-half" or 12.5 feet of the parcel (hereinafter strip) immediately adjacent to their lot, Lot No. 8. Their steadfast refusal to permit the defendants to use this land for access to the beach, coupled with the persistence of the defendants in asserting that they should be permitted to use this land for access to the shoreline, has spurred three actions, two of which are before us here. We conclude that there is error in both actions.

The plaintiffs and defendants are sublessees of shore lots leased by the Latimer Point Management Corporation (hereinafter LPMC) from the Latimer Point Company (hereinafter LPC). On August 10, 1982, the SantaMarias entered into a stipulated judgment with LPMC which terminated a dispute between those parties; *SantaMaria* v. *Latimer Point Management Corporation,* Superior Court, Judicial District of New London, No. 64783 (August 10, 1982) (hereinafter *Latimer Point* case); regarding the use of motor vehicles upon the strip of land at issue here. The stipulated judgment provided, inter alia, that the twenty-five foot passway would be a fire lane under the control of LPMC and that motor vehicles would be prohibited from using the strip except for the purpose of obtaining access to the adjacent lots.

The president of LPMC raised the question of pedestrian use of the strip at the time of the stipulated judg-

ment but that question was left unanswered by counsel and court. That issue was not resolved by the stipulated judgment, and it resulted in the filing of the present actions by which the plaintiffs seek injunctive relief from the defendants' alleged continued trespass; *SantaMaria* v. *Manship* (hereinafter *Manship*); and sureties of the peace as well as money damages arising out of an alleged series of assaults by several of the *Manship* defendants; *SantaMaria* v. *Lennon* (hereinafter *Lennon*).

In *Manship,* the defendants, by special defense, contended that the strip was "common ground" or, in the alternative, that they had acquired a right of way by adverse possession. In addition, the defendants counterclaimed against the plaintiffs alleging that the plaintiffs had appropriated the strip for their use to the exclusion of the defendants and had made it difficult for the defendants to exercise their right of passage over the strip. The defendants sought a declaratory judgment and injunctive relief to prevent the plaintiffs from hindering their access to the strip. The plaintiffs, by special defense, claimed "the use and possession" of the strip.

In *Lennon,* each of the defendants, by special defense, alleged that the plaintiffs had instigated the assaults. In addition, the defendants counterclaimed seeking sureties of the peace and damages from the plaintiffs who, they claimed, continuously harassed them. The plaintiffs, in turn, by special defense claimed that the defendants were the instigators.

On August 22, 1984, the court rendered judgment[2] in each action, ruling in the defendants' favor on vir-

---

[2] The memorandum of decision in each case is incorrectly labeled "Judgment."

tually all issues. In *Manship,* the court dismissed the plaintiffs' complaint, concluding that they had failed to prove that they had a right to exclusive use and possession of the strip. The court found that the plaintiffs had permitted trees and vegetation to grow on their lot "so as to obstruct views of others and diminish their property values." The court also found that the plaintiffs had prevented others from using the strip and harassed those who did. The court, therefore, declared the strip to be "common ground" subject to the regulations of the LPMC. It further found for the defendants on their counterclaim and enjoined the plaintiffs from interfering with the pedestrian use of the strip by association members. The court also ordered the plaintiffs to pay damages of $3500 to the defendants as compensation for the diminution in value of their property.

In *Lennon,* the court found that the defendants had committed the assaults in question, but concluded that the plaintiffs had instigated the assaults, thus providing the defendants with a complete defense to the plaintiffs' complaint. The court also found for the defendants on their counterclaim and ordered the plaintiffs to pay damages in the amount of $500. The plaintiffs have appealed, claiming three errors in the court's judgment in *Manship* and one error in the *Lennon* judgment.

Turning first to *Manship,* the plaintiffs' first claim of error is that the court erred in declaring the strip to be "common ground" when the prior stipulated judgment in the *Latimer Point* case declared the strip to be a "fire lane." We disagree with this contention concerning the effect of the stipulated judgment in *Latimer Point.*

The crux of this claim is that the stipulated judgment in the *Latimer Point* case is res judicata of the rights of the parties in *Manship* and *Lennon* to use the strip

as a pedestrian right of way. A stipulated judgment may operate as res judicata to the same extent as a judgment after a contested trial. *Gagne* v. *Norton,* 189 Conn. 29, 31, 453 A.2d 1162 (1983). The terms of such a judgment, however, "may not be extended beyond the agreement entered into." *Owsiejko* v. *American Hardware Corporation,* 137 Conn. 185, 187–88, 75 A.2d 404 (1950). A close reading of the transcript of the hearing at which the stipulation in the *Latimer Point* case was entered into demonstrates that the parties there agreed only with respect to the use of the strip by vehicles.

Before entry of the stipulated judgment, Charles Noyes, president of LPMC, specifically requested clarification of its terms with respect to pedestrian use of the subject strip of land. The following colloquy took place: "Mr. Noyes: Now, also pedestrians can walk on that? It's open for pedestrians? [Counsel for the Plaintiffs]: That, I can't say. It's a fire lane, whatever a fire lane is under—." A fire lane is a restricted passway reserved for the use of fire vehicles in an emergency. It does not per se prohibit or restrict pedestrian traffic, which physically does not block or impede movement of fire trucks answering a call. It is clear that the use of the strip as a walkway was not within the scope of the stipulated judgment. Hence, the judgment cannot be res judicata in the case before us.

The second claim of error raised by the plaintiffs is that the trial court lacked subject matter jurisdiction over the counterclaim for declaratory relief in *Manship* because all persons having an interest in the subject matter of the dispute were not notified as required by Practice Book § 390 (d). We agree.

Practice Book § 390 (d) provides that "[t]he court will not render declaratory judgments upon the complaint of any person: . . . (d) unless all persons having an

interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." " 'A failure to comply with § 309 (d) [now § 390 (d)] is a jurisdictional defect and, as such, can be raised even on appeal by the court itself.' *Manley* v. *Pfeiffer,* 176 Conn. 540, 545, 409 A.2d 1009 (1979)." *Russo* v. *Watertown,* 184 Conn. 30, 33, 441 A.2d 56 (1981); *Echo Four* v. *Hill,* 3 Conn. App. 118, 123, 485 A.2d 926, cert. denied, 195 Conn. 801, 487 A.2d 564 (1985).

In the present case, the defendants' counterclaim for declaratory relief alleged, in part, that the "Latimer Point Management Corporation subleases seventy-five (75) lots at Latimer Point to individuals located on said lots." The counterclaim was certified as having been mailed "to all counsel of record." At this time, only the individual plaintiffs and defendants were parties to the action. Subsequently, the defendants moved to have LPMC made a defendant to the action, but this motion was denied. Nowhere, however, does the record reflect any attempt by the defendants to notify the remaining sublessees of LPMC's seventy-five lots of the pendency of the declaratory judgment action. The declaratory judgment sought by the defendants would have benefited all of LPMC's sublessees. Consequently, they are "persons having an interest in the subject matter" of the action. The defendants' unsuccessful effort to make LPMC a party defendant was ineffective as notice either to it or to its sublessees. Therefore, the trial court lacked subject matter jurisdiction over the defendants' counterclaim for declaratory relief.

The trial court's memorandum concluded that "Re: Practice Book Section 390 (d), the Court finds that all parties in interest have had reasonable notice of this action as witness some thirty members of the association in the courtroom including various officers of the Management Corporation." There is no basis in the record for such a finding and the court's conclusion was

incorrect. It presumes that all interested parties were notified based upon the presence of some unidentified members of the group in court. Such a conclusion, based upon inductive reasoning, is an insufficient basis upon which to find compliance with the strict notice requirement of Practice Book § 390 (d). This counterclaim, therefore, fails for want of notice to all parties having an interest in its subject matter.

The plaintiffs' third claim is that the court erred in awarding the defendants damages on their counterclaim in *Manship* because of a variance between the pleadings and proof, and lack of evidence to support the amount of damages.[3] We agree.

The court's memorandum expressly states (1) "[t]he Court does not find [that] the plaintiffs planted trees or vegetation in violation of the lease, but does find they have allowed them to grow so as to obstruct views of others and diminish their property values"; (2) "The Court finds the plaintiffs have prevented others from using the twenty-five foot strip in violation of the lease and harassed those who used such twenty-five foot strip of land"; and (3) "The Court finds the value of the defendants' property has diminished as a result of plaintiffs' actions." The court then awarded the defendants money damages of $3500 plus costs.

The plaintiffs claim that this constituted a variance between the pleadings and proof because the counterclaim alleged that the plaintiffs "have planted trees and vegetation which [have] obstructed the views of the defendants and other sublessees." There is no allegation that the plaintiffs had permitted existing trees and

---

[3] Unlike the situation in *Echo Four* v. *Hill*, 3 Conn. App. 118, 125, 485 A.2d 926 (1985), the court's lack of jurisdiction over the declaratory judgment claim in this case does not cause the entire counterclaim to fail. The defendants' claim for damages arising out of the plaintiffs' actions was related to, but independent of, the declaratory judgment claim. Therefore, the claim for damages must also be considered.

vegetation to grow so as to obstruct the defendants' view. The plaintiffs further assert that they have had no prior opportunity to object to the variance created for the first time by the court's decision.

"To set aside a judgment on the basis of a variance between the pleadings and the proof, the variance must be material in a way which is essential to the cause of action claimed." *Francis* v. *Hollauer,* 1 Conn. App. 693, 695, 475 A.2d 326 (1984). In the present case, the variance noted is clearly material to the issue of damages raised by the counterclaim. The sublease provision which prohibits the planting of new trees and vegetation without the written permission of the sublessor also provides that "except for established trees, vegetation shall not obstruct the views of other sublessees." The defendants, however, alleged in their counterclaim only that the plaintiffs "have planted trees and vegetation which [have] obstructed the views of the defendants and other sublessees." Thus, since the defendants failed to prove, as the court found, that the plaintiffs had planted trees or vegetation in violation of the sublease, they could not recover on their counterclaim as it was alleged.[4] The court's decision was on a claim which had not been made by the defendants and which the plaintiffs were not given the opportunity to defend.[5]

---

[4] Although preexisting vegetation which obstructs the defendants' view would constitute a violation of the terms of the sublease, which was not alleged, the violation would be in the extent of its growth, rather than its planting by the plaintiffs or its presence on their property. Thus, the plaintiffs' defense of the counterclaim would focus on a justification of the amount of the vegetation rather than on a justification of its presence if the defendants had alleged that the vegetation was preexisting. Further, established trees may, within the terms of the sublease, obstruct the defendants' view. Hence, the plaintiffs would have a complete defense to any such claim by the defendants.

[5] Ordinarily, the variance between the pleadings and the judgment would require us to remand this counterclaim for a new trial. See *Francis* v. *Hollauer,* 1 Conn. App. 693, 697, 475 A.2d 326 (1984). Because the trial court expressly found that the plaintiffs did not plant any trees or vegeta-

Turning to the issue of whether the plaintiffs waived any objection to the variance, "[i]t is true that an objection to a variance of proof from the pleadings is waived if not taken at the trial. . . . Here there was no proof by either party nor was there any offer of evidence as to a variance, and it appears that the first time either party would have been able to object to a variance would have been after the judgment of the court was rendered. Since there was no opportunity to object to the variance before the end of the trial, it cannot be said that the plaintiff waived his right to object to the court's judgment which was limited to the pleadings and to the proceedings at the trial." *Bronson & Townsend Co.* v. *Battistoni,* 167 Conn. 321, 326, 355 A.2d 299 (1974). In the present case, a review of the transcript shows that neither party attempted to elicit any testimony regarding the growth of established vegetation. Testimony on this point was merely alluded to by the plaintiffs in the form of negative answers to the defendants' counsel's questions regarding whether the plaintiffs had planted any new trees or vegetation in violation of the lease. The first occasion upon which the parties received any indication of the variance between the pleadings and the proof was when the decision was issued by the court. We hold, therefore, that the plaintiffs have not waived their right to object to the variance.

The plaintiffs' final claim of error relates to the *Lennon* case and is that the court erred in concluding that the plaintiffs' provocation was a complete defense to the defendants' assaults on the plaintiffs. They also claim that the court erred in awarding damages to the defendants on their counterclaim since no evidence was presented by the defendants regarding damages.

tion, however, the counterclaim could not prevail at trial. For that reason, we remand this claim with direction to the court to render judgment for the plaintiffs on the counterclaim for damages for loss of view.

"[T]he issue of provocation relates only to the question of damages and not to liability. Provocation is a proper defense to a punitive damage claim. . . . A finding of provocation does not justify an assault, but merely limits liability to actual damages sustained." *Manning* v. *Michael,* 188 Conn. 607, 615–16, 452 A.2d 1157 (1982). In the present case, after finding that the "defendants did commit the acts complained of in the complaint," the court erred in further finding "for [the] defendants on the special defenses that the plaintiffs were the instigators of those acts and therefore [ordering] judgment for the defendants on the complaint." For that reason, we must remand this action to the trial court for a determination of the plaintiffs' actual damages.

With regard to the defendants' counterclaim, the court found that the defendants had proven the claim, while the plaintiffs had not proven their special defenses that the altercations between the parties were instigated and caused by the defendants and that the plaintiff had exclusive use of the strip. Although the court awarded the defendants damages of $500 in *Lennon,* no evidence was offered to support any award of actual damages. The only evidence of damages offered by the defendants related to the diminution in value of their leaseholds caused by the plaintiffs' obstruction of their view. No evidence of the effect of the plaintiffs' harassment was offered at all. The defendants did testify as to the amount of the attorney's fees which they had paid to date. That amount, $3500, would only be an appropriate element of punitive damages rather than actual damages. See *Markey* v. *Santangelo,* 195 Conn. 76, 80, 485 A.2d 1305 (1985). Nowhere in the defendants' complaint do they request punitive damages, however.

In *Manning* v. *Michael,* supra, the court held that the complaint must "employ language sufficiently explicit

to inform the court and opposing counsel that punitive damages [are] sought." Id., 619. There, the court concluded that the plaintiff, who merely sought "damages" in his prayer for relief, had not satisfied this standard. Id. Similarly, in *Markey* v. *Santangelo,* supra, the plaintiff's prayer for relief did not seek punitive damages, although the factual allegations of the complaint charged "by way of reasonable inference that the defendants wilfully assaulted the plaintiff." Id., 78–79. The court in that case concluded that the complaint put the defendants on notice that they were being charged with aggravated conduct. The court further concluded that because the defendants never objected to the plaintiff's subsequent request to open the case for the purpose of presenting evidence of punitive damages, they could not "play possum" and claim on appeal that punitive damages had not properly been claimed below. Id., 79–80. Had they objected below, the court noted, the plaintiff could have moved to amend his complaint. Id., 79.

In the present case, the prayer for relief in the defendants' counterclaim did not expressly seek punitive damages. Further, the brief set of questions asked by the defendants' counsel of one of his clients, who was on the witness stand at the time, regarding their fee arrangement and the fees paid to date was insufficient to notify the plaintiffs that punitive damages were being sought. It was not until closing arguments that the defendants made their request for punitive damages clear. At that point, it was too late for the plaintiffs to bring evidence to dispute that claim. Hence, the court could not properly have awarded punitive damages in this case.

Since there was no evidence of actual damages in *Lennon,* and since an award of punitive damages would

have been improper, we conclude that the court erred in awarding $500 in damages to the defendants on their counterclaim.

There is error in part in the case of *SantaMaria* v. *Manship,* the judgment is set aside and the case is remanded with direction to render judgment as on file except, with respect to the defendants' counterclaims for declaratory relief and damages, judgment should be rendered for the plaintiffs; there is error in the case of *SantaMaria* v. *Lennon,* the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs on the complaint and on the counterclaim and to conduct a hearing in damages on the complaint with respect to the plaintiffs' actual damages.

In this opinion the other judges concurred.