EMERY J. VAJDA *v.* ANTHONY A. TUSLA, JR., ET AL.
(13723)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 3—decision released April 10, 1990

*Lawrence L. Connelli,* for the appellant (defendant Diane M. Tusla).

*Robert R. Sheldon,* with whom, on the brief, was *T. Paul Tremont,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The plaintiff, Emery J. Vajda, brought this action for damages resulting from injuries and losses he sustained when a motorcycle he was operating collided with an automobile operated by the defendant Diane M. Tusla (defendant).[1] The jury, through interrogatories, found that the plaintiff was 25 percent negligent and the defendant 75 percent negligent. It further found that the total amount of damages sustained by the plaintiff was $200,000 and it, therefore, rendered a verdict of $150,000 under the doctrine of comparative negligence.

The defendant thereafter filed a motion to set aside the verdict alleging a number of errors by the trial

[1] When this action was instituted, Anthony A. Tusla, Jr., the father of Diane M. Tusla and the owner of the motor vehicle that she was operating at the time of the accident, was also named and served as a party defendant. Thereafter, the action was withdrawn as to Anthony A. Tusla, Jr.

court. The trial court denied the motion on every ground advanced. This appeal followed. On appeal, however, the defendant has presented only one issue for our review. Her sole claim is that the trial court erred in failing to charge the jury as she orally requested with regard to comments made by the plaintiff's counsel during his argument when, referring to an anesthesiology bill, that had been admitted into evidence, which was for $311.50 for two hours of anesthesia, counsel suggested to the jury that relief from pain was worth $150 per hour.[2]

The defendant focuses on the following portion of the plaintiff's argument: "Nobody pays for pain. Now how do you measure what he should get because he has pain? You see the problem? It's a problem. It's difficult, difficult. The only thing you'll notice in this case, you'll notice when you go through the bills, that Jimmy has incurred One Thousand Eight Hundred Dollars ($1,800) for anesthesiology. And you'll see that what he's incurred is a hundred and fifty dollars ($150) an hour on one bill to be relieved of pain. That's about the only time, I guess, if you think about it, that we sort of measure the value of pain and suffering, because I think all of us, whether it's going to the dentist or having an operation, or perhaps buying some sort of pain medication. But generally, when you look at those bills, that's about the only time that we sort of pay to be free from pain and suffering."

---

[2] The anesthesia bill in evidence which was referred to was the following:

"Mr. James Vajda
245 Seltsam Road
Bridgeport, CT 06606

This Bill is for Anesthesia Services and is Separate from Hospital and Surgeons Fee.

| DATE | | FEE | PAID/CR. | BALANCE |
|---|---|---|---|---|
| 8-2-85 | 2 Hours Administration of Anesthesia | 311.50 | | 311.50" |

During the recess after the plaintiff's argument and prior to the defendant's argument, the defendant's counsel objected to the plaintiff's counsel "mentioning that a hundred and fifty dollars ($150.00) an hour is the only price, so far, that has been put on the relief of an hour's worth of pain, smacks of suggesting a figure and/or a formula which is precisely why the Connecticut Supreme Court ruled as it did last week on the cases [*Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), and *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989),] that were appealed with regard to mentioning a money figure to the jury both as an opinion; and mentioning a money figure to the jury with regard to a formula . . . but I would move that the Court, prior to my argument, issue a brief instruction to the jury that a figure suggested by Mr. Tremont is in no way indicative, and should not be considered by them as an appropriate amount or suggestion as to what an hour's worth of pain or suffering or whatever is worth." He continued: "And also, it's misleading because what's going on in a surgical procedure, where you're opening up a part of the body, and removing bone or removing scar tissue is not the same sort of thing that Mr. Vajda testified to here in the courtroom. And it's awfully misleading to the jury for them to have thrown out to them, during a closing instruction, a figure about what an hour's worth of pain is worth in the sort of context."

The plaintiff's counsel responded, arguing "I don't believe that the [Supreme Court] decision says that you cannot mention pain . . . [and] suffering . . . ." In further response to the defendant's argument that his comments equated $150 an hour to one hour's worth of pain, plaintiff's counsel continued stating that the fact is "[t]he stuff is in evidence, and there's a three hundred and eleven dollar ($311.00) bill for two hours of anesthesia." Maintaining that he did not think of it

as a formula nor did he suggest a formula to the jury, he said that "I'm saying that this is one of the few times in our life that we actually pay to be free of pain." Stating that he had been careful in his argument to avoid including comments that suggested "any formula to [the jury] whatsoever, or any figure," he contended that no instruction was needed as the defendant claimed.

The defendant's counsel, in reply, stated that what the plaintiff's counsel "was trying to do was to subliminally inject into [the jury] what an hour's worth of pain is worth," and he repeated that this was why this court ruled in *Carchidi* and *Pool* as it did. In further attacking these comments of the plaintiff's counsel, he again argued that "an hour's worth of surgery is not the same thing" as one hour's worth of pain. To support further his claim that the plaintiff was "suggesting [to the jury] what they should do in the area of damages," he referred to the comment by the plaintiff during argument that, based upon the plaintiff's stipulated life expectancy of 45.7 years,[3] the jury would have "to compensate [the plaintiff] for forty-five-point-seven years for every minute and every hour for the rest of his life."[4]

---

[3] There was expert testimony that the plaintiff had sustained a 25 percent permanent disability to his forearm.

[4] During his argument, the plaintiff's counsel said: "Now, for all those years, if he lives that long, five hundred and forty months in the future. For all those months and years, you've got to give him compensation for each and every day and each and every hour that he has this disability."

An acknowledged authority on the law of damages said: "Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement, and consequently the judge can, in his instructions, give the jury no standard to go by; he can only tell them to allow such amount as in their discretion they may consider reasonable. Rules devised for measuring pecuniary losses do not fit here." C. McCormick, Damages (1975) § 88, p. 318; see also 2 F. Harper & F. James, The Law of Torts (2d Ed.) § 25.10, p. 564.

This recognizes that rarely is pain constant over the entire life expectancy of a plaintiff and that even if the evidence indicated that that was so, the common sense of jurors would also recognize as well that the inten-

The trial court indicated that it would take the matter under advisement and that if it did anything, it would be done during its final charge to the jury. The trial court did not give the jury any instructions until after the arguments were concluded. The defendant's counsel took no exception to the trial court's decision not to give an instruction at the time of the arguments.

At the outset of its final jury instructions, the trial court admonished the jury that "in deciding this case, you must only consider that information which was admitted as evidence in this courtroom." On the issue of damages as to physical and mental pain and suffering, the trial court charged, inter alia: "The rule of damages is that insofar as money can do it, the Plaintiff is to get fair, just and reasonable compensation for the injuries which he has suffered. It is for you, ladies and gentlemen, in the exercise of your best judgment, to say what is fair and just compensation. You have to apply sound common sense in reaching the amount of your verdict. There is no mathematical formula, no formula, other than by human experience; and the exercise of your best judgment of what is fair and just compensation. . . . You must not speculate or guess as to damages. You must bear in mind at all times that the burden is on the Plaintiff to prove that [it] was a proximate consequence or the result of the incident which caused the injuries; and to prove the reasonable amount of his damages." The trial court thereafter told the jury that the elements of damages could be separated into two major categories: the first from the date of injury on June 29, 1984, to the date of the trial, and the second, as to the future. As to the former, it told

sity of pain normally varies with individuals. Such significant circumstances involving the nature, extent and intensity of pain and suffering from one person to another reinforces the wisdom of the use of the fair, just and reasonable compensation standard for pain and suffering by the jury unaided by anything not disclosed by the evidence.

the jury that it could award a sum "which will reasonably compensate him for any past physical suffering" as well as damages "for mental suffering that he has experienced." After instructing the jury to consider the effects of the plaintiff's injuries "and the resulting pain that he has experienced; and the effect it has had on his daily activities," it said that "[a]s far as money can compensate him for this aspect of the case, you must award a fair, just, and reasonable sum." Immediately thereafter, it said: "Obviously, this is a difficult matter to determine. There are no objective guidelines by which you can measure the money equivalent of these elements of injury. The only real measuring stick, if it can be so described, is your collective enlightened judgment. In making your determination, you should consider all the relevant evidence; taking into consideration the extent and the duration of such pain and suffering. In this respect, you may consider the testimony of the Plaintiff, the Plaintiff's girlfriend, and the doctor. The amount you award for this aspect of the damages must be fair and reasonable."

Turning to damages for the future, the trial court said, inter alia: "As for the future, you must as best you can, compensate him for such results as are reasonably probable. Once this case is concluded, the Plaintiff cannot come back into Court and—in the future for additional damages against the Defendant for the incident in question. So any award to which he is entitled for the future, must be given to him now. Future damages are not a matter of speculation. It is not a matter of guesswork. You must be satisfied with a reasonable degree of certainty that the result which you are attempting to compensate him for is reasonably probable." The jury was also instructed that it "must determine for how long into the future [the plaintiff] will suffer these damages." Here, it referred to the evidence that the plaintiff had "sustained a twenty-five percent

permanent disability to his forearm," as well as that, according to the mortality tables, he had 45.7 years of life expectancy, the ramifications of which it explained fully.

Thereafter, the trial court also said: "In determining damages for the future, you should consider the physical pain and suffering he will endure, and the effects it will have on his daily activities. I realize that, for the future, this is even more difficult to evaluate than it was for that which has occurred before trial. However, you must award a fair, just, and reasonable sum for this aspect of the case, taking into consideration, where applicable, what I've had to say about these elements of damages for the period prior to trial." After it had concluded its charge on damages, the court said: "[C]ounsel [have] commented on some of the evidence in their summations. I wish to stress to you that you are the sole judges of the facts. And if [your] recollection of the facts differs from mine or that of the attorneys, it is your recollection that controls."

After the trial court had instructed the jury, the defendant's counsel took the following exception: "I had requested yesterday at the conclusion of Attorney Tremont's remarks, that Your Honor issue some sort of a supplemental charge or instruction to the jury that counsel's mentioning of the one hundred and fifty dollar ($150.00) an hour figure was not to be considered by them in terms of evaluating an hour's worth of pain and suffering.

"First, because I believe it violated *Carchidi* v. *Rodenhiser* and *Pool* v. *Bell;* both of which came down about a week or two ago.

"And secondly, because I believe it was misleading for him to say that one hundred and fifty dollars ($150.00) an hour is what the marketplace, so to speak, has put on an hour's worth of pain and suffering, when

that really was what it cost to anesthetize the Plaintiff during a surgical procedure. And that's certainly not the same thing.''

In its memorandum of decision on the defendant's motion to set aside the verdict, the trial court addressed the defendant's claim that it had erred ''by allowing plaintiff's counsel to comment in final argument on the hourly rate an anesthesiologist charged in the context that those comments were made.'' It noted the defendant's argument that ''Connecticut law prohibited [the plaintiff's counsel] from suggesting a monetary figure to the jury which he believed they should award for damages; *Carchidi* v. *Rodenhiser*, [supra,] 530; [or] a monetary formula. *Pool* v. *Bell*, [supra,] 539.'' Continuing, it also noted that during the plaintiff's counsel's argument he ''proceeded to discuss the nature of pleasure by making reference to such things as attending the theater,[5] to which the defendant did not object.'' Turning to the anesthesiologist's bill, the trial court observed, in its memorandum, that that bill included ''a charge of $302 [sic] for 2 hours of service.'' It said that ''[surely], counsel [had] a right to comment on [this] bill which was a full exhibit and which itemized the charge of $302 [sic] for the 2 hours.''[6] Not only did the plaintiff, the trial court said, have a right to argue the element of pain and suffering but in doing so, ''he had a right to symbolically characterize the elements of pain and suffering just as he had a right to symbolically

[5] Immediately prior to the comments upon which the defendant focuses, the plaintiff's counsel, without objection, said: ''And, again, we all know how to buy pleasure, you know? You want to spend four or five dollars ($4.00 - $5.00) and go to a movie; you want to spend fifty or seventy-five dollars ($50.00 - $75.00) I guess, today, to go to a play in New York; you want to spend two or three dollars ($2.00 - $3.00) to have a drink; whatever it is. If you want to spend a thousand dollars ($1,000.00) to go on a vacation. Whatever it is, people know how to buy pleasure. We're willing to pay for pleasure.''

[6] The record indicates that all the medical, hospital and other out-of-pocket expenses, which were introduced as exhibits, totaled approximately $32,000.

characterize pleasure." Positing that *Carchidi* and *Pool* "must be put in their proper factual perspectives," the trial court determined that "[n]either [of] the arguments in *Carchidi* and *Pool* [was] similar to those in this case."[7] It concluded its disposition of this claim by observing that "[c]arrying [*Carchidi* and *Pool*] further than their factual underpinnings would certainly deprive counsel, both for the plaintiff and [the] defendant, of effective use of final arguments which is an essential part of a jury trial."

On appeal, the defendant claims that the excerpted portion of the plaintiff's summation is in direct contravention of our holdings in *Carchidi* and *Pool.* Here she claims that the challenged comments fall directly within the prohibitions of these decisions, particularly pointing to *Pool,* where we said that because we had concluded in *Carchidi* that counsel may not argue the pecuniary value of a plaintiff's personal injuries by suggesting specific sums to be awarded for such intangibles as pain and related disability, "it necessarily follows that counsel may not indicate the monetary components used to arrive at the sums suggested for such elements of damages." *Pool* v. *Bell,* supra, 539; see *Carchidi* v. *Rodenhiser,* supra.

Damages may be awarded for pain and suffering, past, present and future, resulting from the injuries so long as the evidence affords a basis for a reasonable estimate by the trier of fact of the amount. *Levin*

---

[7] Here, the trial court said: "In *Carchidi* [v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989)], the court found objectionable counsel's argument 'that the plaintiff was entitled to an award of $25,000.00 for pain and suffering, and that, when this amount is combined with other elements of damages, the plaintiff was entitled to a total award of $30,000.' 209 Conn. at 527; and in *Pool* [v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989)], the court ordered a new trial when the plaintiff argued a number of days times an assigned value for each element of damage. 209 Conn. at 537–38. Neither [of] the arguments in *Carchidi* and *Pool* [was] similar to those in this case."

v. *Ritson,* 179 Conn. 223, 228, 425 A.2d 1279 (1979); *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928); *Leabo* v. *Leninski,* 2 Conn. App. 715, 727, 484 A.2d 239 (1984); see J. Stein, Damages and Recovery (1972) § 8. An award of damages for pain and suffering is peculiarly within the province of the trier of fact and the fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery for that element of damages. *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982); *Sadonis* v. *Govan,* 132 Conn. 668, 670, 46 A.2d 895 (1946); *Leabo* v. *Leninski,* supra. Not only are damages for pain and suffering peculiarly for the trier of fact, but "[p]roper compensation [for pain and suffering] cannot be computed by a mathematical formula . . . there is no iron-clad rule for the assessment of damages." *Manning* v. *Michael,* supra.

It is against this background that we decided *Carchidi* and *Pool,* both of which are factually distinguishable from this case. In *Carchidi,* we held that counsel could not, during closing argument, "state to the jury his belief as to the pecuniary value of the plaintiff's personal injury claim . . . because [to do so] improperly influences the jury in arriving at a verdict." *Carchidi* v. *Rodenhiser,* supra, 526–27.[8] In that case, the plaintiff's counsel sought and obtained permission, over the defendant's objection, to argue to the jury a specific amount of money, $30,000, that the jury should return as a verdict. In ruling that he could do so, the trial court stated that "these suggestions could not be in combination with any mathematical formulae."[9] Id., 527. In *Pool,* the trial court permitted the plaintiff's counsel

[8] In doing so, we overruled *Levin* v. *Ritson,* 179 Conn. 223, 425 A.2d 1279 (1979), to the extent that granting or denying counsel's request to so argue to the jury was a decision left to the discretion of the trial court. *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 530, 551 A.2d 1249 (1989).

[9] In *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 527, 551 A.2d 1249 (1989), during closing argument, "counsel for [Carchidi] suggested to the jury that

in closing argument to use a blackboard[10] to set forth a per diem mathematical formula for use by the jury in computing the damages to be awarded to the plaintiff. *Pool* v. *Bell,* supra, 537. We further observed in *Pool* that although *Levin* v. *Ritson,* supra, "drew a distinction between suggesting a sum to be awarded for pain and suffering and using a mathematical formula based on speculative factors," because "our holding in *Carchidi* is applicable to both types of arguments"; id., 539; there was no need to decide whether our holding in *Levin* "left the use of mathematical formulae in closing argument to the discretion of the trial court, as that question is now academic."[11] Id., 540.

the plaintiff was entitled to an award of $25,000 for pain and suffering, and that, when this amount was combined with the other elements of damages, the plaintiff was entitled to a total award of $30,000."

[10] In *Pool* v. *Bell,* 209 Conn. 536, 537–38, 551 A.2d 1254 (1989), [o]n the blackboard, counsel for the plaintiff set out six categories of damages: medical expenses, pain and suffering, mental distress, permanent disability, loss of ability to do household duties, and loss of enjoyment of activities. The plaintiff's counsel then assigned a dollar value to each item of damages and multiplied each amount, except medical expenses, by 15,178, the number of days corresponding to the period from the date of the operation to the probable date of the plaintiff's death, based upon his 37.3 year life expectancy at the time of trial. The totals for each category were then added for a grand total of $345,851, which counsel for the plaintiff told the jury was a fair amount to award the plaintiff. In *Pool,* we noted, by way of example, that the plaintiff's counsel assigned a value of $10 per day for future pain and suffering, $5 per day for permanent disability, and $1 per day for the loss of ability to do household duties.

[11] After the publication of our decisions in *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), and *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989), the General Assembly enacted Public Acts 1989, No. 89-319. That act, entitled "An act concerning the award of damages to victims of civil wrongs," provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death, counsel for any party to the action shall be entitled to specifically articulate to the trier of fact during closing arguments, in lump sums or by mathematical formulae, the amount of past and future economic and noneconomic damages claimed to be recoverable.

"(b) Whenever, in a jury trial, specific monetary sums or mathematical formulae are articulated during closing arguments as provided for in subsection (a) of this section, the trial court shall instruct the jury that the

At the outset of our analysis, we take up the defendant's threshold claim that the plaintiff's argument violated our decisions in *Carchidi* and *Pool.* The plaintiff in this case, however, did not, as in *Carchidi,* state "to the jury his belief as to the pecuniary value of the plaintiff's personal injury claim" during his argument. *Carchidi* v. *Rodenhiser,* supra, 526. Specifically, we determine that there was no violation of our statement in *Carchidi* that "the practice of mentioning the sum to be awarded to the plaintiff for pain and suffering constitutes an unwarranted intrusion into the domain of the jurors." Id., 535.

In discussing our determination that *Carchidi* was not violated, we should point out that, in *Pool,* we noted that our holding in *Carchidi* was applicable to both types of arguments, whether based on a "lump sum" or on a mathematical formula. Moreover, in *Pool,* we commented upon the distinction we drew in *Levin* v. *Ritson,* supra, "between suggesting a sum to be awarded for pain and suffering and using a mathematical formula based on speculative factors."[12] *Pool* v. *Bell,* supra, 539. The plaintiff's challenged argument was not one, reasonably understood, to have "suggest[ed] a sum to be awarded for pain and suffering."

The challenged argument did not mention or suggest the sum to be awarded to the plaintiff for pain and

sums or mathematical formulae articulated are not evidence but only arguments and that the determination of the amount of damages to be awarded, if any, is solely the jury's function."

Public Acts 1989, No. 89-319 became effective on October 1, 1989, and, therefore, was not in effect at the time of the verdict in this case, which was returned on January 13, 1989.

[12] Because of the applicability of *Carchidi* v. *Rodenhiser,* 209 Conn. 526, 551 A.2d 1249 (1989), to this distinction in *Levin* v. *Ritson,* 179 Conn. 223, 425 A.2d 1279 (1979), we concluded in *Pool* v. *Bell,* 209 Conn. 536, 551 A.2d 1254 (1989), that "we need not decide whether our holding in *Levin* v. *Ritson,* left the use of mathematical formulae in closing argument to the discretion of the trial court, as that question is now academic." *Pool* v. *Bell,* supra, 539-40.

suffering, and it did not imply any mathematical formula to be used by the jury to do so. It did, at its worst, imply that during the two hours he was subjected to the anesthesia, he was free of conscious pain and suffering, and the charge for that service, as indicated by the anesthesiologist's bill, came to approximately $150 per hour.[13] The challenged remarks could not be considered a suggestion, as the defendant claims in violation of our case law. It then follows that there was no mathematical formula suggested in the practical use of that term in the sense of the existence of a group of components in association to express a single concept, i.e., how to arrive at a dollar amount. This portion of the plaintiff's argument was truly isolated in the sense that it stood alone in the argument; it contained nothing that the jury could conceivably have applied to the evidence to translate into a specific dollar amount. It hardly needs pointing out that there was no blackboard with the itemization of damages as in *Pool* nor the declaration by counsel of a specific sum for the value of the plaintiff's personal injury claim as in *Carchidi.*

In the context of the defendant's claim that the argument violated our case law, it is important to keep in mind the effect of this argument upon the jury whose province as factfinders was thereby allegedly intruded upon. This jury had seen and heard all of the evidence including the testimony of the plaintiff, his girl friend and the medical expert concerning, inter alia, pain and suffering. It also had the exhibits, including medical and hospital records, and, in addition, the evidence on the plaintiff's life expectancy. Not only must the jury's knowledge of the evidence be factored into assessing

---

[13] We disagree with the plaintiff's statements in the absence of the jury, after his argument that suggests that, because the anesthesiologist's bill was in evidence as an exhibit, that accords him some unusual right as to the parameters of comments he can make concerning it during argument.

the effect, if any, upon them of the argument, but the common sense and human experience of the jury must also be considered. "Jurors are not 'expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct.' " *Frankovitch* v. *Burton,* 185 Conn. 14, 22, 440 A.2d 254 (1981); *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 545, 562 A.2d 1100 (1989). "Jurors have the right to apply their own common sense and to use the general knowledge they have in common with the rest of mankind." *Noland* v. *Sears, Roebuck & Co.,* 207 Kan. 72, 76, 483 P.2d 1029 (1971). "[T]rials do not take place in a vacuum and justice correctly relies on the common sense and common experience of jurors." *Malvicini* v. *Stratfield Motor Hotel, Inc.,* 206 Conn. 439, 448, 538 A.2d 690 (1988). The jurors could not reasonably have understood this argument as a "suggestion" or the "mentioning" of a sum to be awarded for pain and suffering because the court's instructions could reasonably have been interpreted to apply only to any *conscious* pain and suffering disclosed to them by the evidence that they might choose to credit. A charge to the jury is to be considered from the standpoint of its effect upon the jury in guiding it to a correct verdict and it is to be presumed, in the absence of a clear indication to the contrary, that the jury followed the court's instructions. *Tomczuk* v. *Alvarez,* 184 Conn. 182, 193, 439 A.2d 935 (1981); *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 426, 216 A.2d 818 (1966).

The defendant's claim that the argument was misleading[14] because it dealt with anesthesia during

_____

[14] In a case where a trial court permitted a per diem argument as to damages (and where no blackboard or charts were used), an appellate court

surgery and, therefore, was not, in effect, conscious pain and suffering and, therefore, potentially compensatory also lacks merit for the same reason. It is well here to remember "that there are injuries to which human experience teaches there is accompanying pain" and jurors "are not to be faulted . . . if they do not believe all they are told and all that their common experience does not accept. That is not to say, they may disregard obvious injury. It is, however, to say that they are not obliged to believe that every injury causes pain or the pain alleged." *Boggavarapu* v. *Ponist,* 518 Pa. 162, 167, 542 A.2d 516 (1988). In light of the trial court's explicit instructions, we can reasonably expect that the jurors in this case, drawing on their personal reservoir of common sense and human experience, properly assessed the evidence offered to them as to pain and suffering.

Moreover, the trial court instructed the jury that "in deciding this case, you must only consider that information which was admitted as evidence in this courtroom." It is axiomatic that arguments of counsel are not evidence. We subscribe to the view that, absent a contrary showing, "[w]e cannot attribute to any jury in this state a lack of sufficient mentality to distinguish between the two." *Jones* v. *Hogan,* 56 Wash. 2d 23, 31–32, 351 P.2d 153 (1960); see *Newbury* v. *Vogel,* 151 Colo. 520, 527, 379 P.2d 811 (1963); *Evening Star Newspaper Co.* v. *Gray,* 179 A.2d 377, 382 (D.C. Mun. Ct. App. 1962). In addition, "[t]he legal presumption is that jurors will do their duty according to their oaths." *Winters* v. *Floyd,* 51 Tenn. App. 298, 306, 367 S.W.2d 288 (1962); 29 Am. Jur. 2d, Evidence § 170.

---

in another jurisdiction has rejected the claim that the argument apparently misled the jury and noted that it apparently did not mislead the jury because the award to the plaintiff was less than one third of the lowest per diem estimate of her attorney. *Evening Star Newspaper Co.* v. *Gray,* 179 A.2d 377, 383 n.6 (D.C. Mun. Ct. App. 1962).

In conclusion, we cannot accept the defendant's claims that the plaintiff's argument violated *Carchidi* or *Pool.* We have observed that proper compensation for pain and suffering cannot be computed by mathematical formula and that there is no iron-clad rule for the assessment of damages. *Manning* v. *Michael,* supra; see also *Birgel* v. *Heintz,* 163 Conn. 23, 34, 301 A.2d 249 (1972); *Jerz* v. *Humphrey,* 160 Conn. 219, 222, 276 A.2d 884 (1971). It is fair to say that, had the instructions explicitly addressed the plaintiff's reference to the anesthesiology bill, as the defendant requested, the trial court in so doing would have highlighted the very argument now challenged. In that event, the jury could then have regarded such an instruction as "an implicit recognition" that the trial court considered that argument improper. See *Carchidi* v. *Rodenhiser,* supra, 535. As an appellate court, we should not overlook the circumstance that "[f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, upon the printed record, what factors, if any, could have improperly influenced the jury." *Butler* v. *Steck,* 146 Conn. 114, 119, 148 A.2d 246 (1959); *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982); *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 322, 430 A.2d 1 (1980); *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 559, 364 A.2d 217 (1975). This consideration further supports our conclusion that the trial court did not err as claimed. Finally, it remains only to note that the trial court's denial of the defendant's motion to set aside the verdict, which included the defendant's present claim on appeal, is entitled to great weight. *Hearl* v. *Waterbury YMCA,* supra; *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981).

There is no error.

In this opinion the other justices concurred.