## RENAY VICKERS *v.* KIM JESSUP
## (11613)

DUPONT, C. J., LAVERY and HEIMAN, Js.

Argued May 10—decision released August 3, 1993

*Mark A. Newcity,* for the appellant (defendant).

*Matthew Shafner,* with whom were *Daniel R. Cunningham* and, on the brief, *Peter J. Bartinik,* for the appellee (plaintiff).

LAVERY, J. The defendant appeals from the judgment of the trial court rendered in favor of the plaintiff after a jury trial in a personal injury action. The defendant claims that the trial court improperly (1) refused to set aside the jury's verdict as contrary to the evidence after improperly allowing the expert testimony of a physician whose testimony was not given or based on reasonable medical probability, (2) allowed into evidence certain medical opinions for which a proper foundation had not been established, (3) excluded from evidence certain statements by the plaintiff concerning the cause of her injuries, (4) refused to set aside the verdict or order a remittitur because the verdict was excessive and not based on evidence presented at trial. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On February 17, 1988, the plaintiff was injured when an automobile driven by the defendant struck the rear of an automobile in which the plaintiff was a passenger. Both vehicles were traveling on Interstate 95 in Stonington at the time. The force of the impact caused the automobile in which the plaintiff was riding to cross over the guardrail at the side of the highway, and roll over. The car seat in which the plaintiff's daughter was riding broke loose, striking the plaintiff

in the face and pinning the plaintiff across both legs. The plaintiff was trapped in the vehicle for forty-five minutes before she was extricated and brought to the hospital for treatment of her injuries. Several weeks after the accident, the plaintiff returned to her home in Boise, Idaho, where she sought continued treatment for her injuries. Further facts and procedural history will be recounted as necessary throughout this opinion.

## I

The defendant first claims that the trial court should have granted her motion to set aside the verdict because it improperly allowed into evidence the testimony of Jeffrey Hessing, an orthopedic surgeon, absent an adequate showing that his testimony was given or based on reasonable medical probability. We disagree.

The following procedural history is relevant to the disposition of this issue on appeal. Approximately one month before the trial began, the plaintiff deposed Hessing. Hessing, an orthopedic surgeon practicing in Idaho, had treated the plaintiff for chondromalacia patella, an inflammation of the lining of the kneecap, that resulted from the February, 1988 accident involving the defendant. During the trial, much of Hessing's deposition testimony was read into the record before the jury. In his deposition testimony, Hessing expressed his medical opinion on a number of subjects including the case treatment, disability, and causal relationship of the plaintiff's injuries to the accident of February 17, 1988.

When the plaintiff initially sought to present Hessing's opinions as expressed in the deposition, the defendant objected because the plaintiff did not ask Hessing to express his opinion on each question in terms of reasonable medical certainty. The trial court initially sustained the defendant's objection, ruling that the plaintiff had failed to establish that Hessing's expert

opinions were based on reasonable medical certainty. Further, the trial court ruled that a question posed after the objections to the previous questions had been sustained, asking Hessing whether his opinions had been made with reasonable medical certainty, failed to provide an adequate foundation for allowing him to express his opinions. The trial court stated that an adequate foundation cannot be established after a question has been asked and an objection to the question has been sustained.

The plaintiff contended that the necessary foundation for the testimony of Hessing had been established, and was in his medical report of December 13, 1990, that had previously been admitted into evidence. The trial court then ruled that because this report had previously been admitted into evidence, the testimony of Hessing, previously excluded, became admissible. The previously excluded questions and answers in Hessing's deposition testimony were then read to the jury.

It has long been recognized that, in order to avoid speculation and conjecture, "[a] trier is not concerned with possibilities but with reasonable probabilities." *Boland* v. *Vanderbilt*, 140 Conn. 520, 525, 102 A.2d 362 (1953). "An expert witness is competent to express an opinion, even though he or she may be unwilling to state a conclusion with absolute certainty, so long as the expert's opinion, if not stated in terms of the certain, is at least stated in terms of the probable, and not merely the possible." *Healy* v. *White*, 173 Conn. 438, 443, 378 A.2d 540 (1977). "For medical testimony to have any probative value, it must at least advise the jury that the inference drawn by the doctor is more probably correct than incorrect." Id., 444. "Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined

by looking at the entire substance of the expert's testimony." *Struckman* v. *Burns,* 205 Conn. 542, 555, 534 A.2d 888 (1987).

In claiming that Hessing's testimony was not given or made with reasonable medical certainty, the defendant directs us to the doctor's use of the words "I felt" or "I suspected" preceding his opinions regarding the medical condition of the plaintiff. The use of certain colloquial phrases to begin a sentence does not move the surgeon's testimony into the realm of inadmissible speculation. According to Webster's Collegiate Dictionary (10th Ed.), the verb "felt," as used in Hessing's deposition, and later at trial, means the state of being "conscious of an inward impression, state of mind or physical condition." Synonyms of "feel" are "believe" and "think." Id.

Our Supreme Court has held that the phrase "I think" followed by medical opinion testimony does not render the opinion a statement of mere possibility. *In re Theresa S.,* 196 Conn. 18, 28, 491 A.2d 355 (1985). Likewise, in the present case, the witness' use of "I felt" or "I suspected," or similar phrases, when viewed in the context of his entire testimony, did not transform his opinions into speculation.

Under the test established in *Struckman* v. *Burns,* supra, and its progeny, we look to the medical expert's testimony as a whole to determine if it was made or given with the requisite medical certainty. Our careful review of Hessing's testimony reveals that it was given with reasonable medical certainty, and would not tend to lead the jury to engage in harmful speculation or conjecture.[1]

---

[1] We note that the following exchange occurred during Hessing's deposition testimony that was read into evidence:

"Q. Are you familiar with the concept of reasonable medical certainty as it's used in forming a medical opinion?

The defendant further claims that the trial court improperly ruled that a medical report written by Hessing established a proper foundation for the admission of his expert deposition testimony. We disagree.

During the trial, the trial court initially sustained the defendant's objections to the admission into evidence of Hessing's medical opinions. After hearing argument from both sides regarding the admission of the medical opinion testimony, the trial court ruled as follows: "The report that has been admitted into evidence without objection, I believe, in fact, was the report of Orthopaedic Associates admitted by the defendant dated December 13, 1990. [It] indicates on the third page: ['I]n conclusion then, to this patient's multiple and rather vague complaints, the only residual problems that I feel she has as a direct result of her car accident of February, 1988, is her residual anterior knee pain. I feel it's secondary to chondromalacia patella bilaterally . . . .' I believe that's the same testimony to which objection is being made today, that the necessary language of reasonable medical probability was not laid as a foundation. I believe that the fact that the

---

"A. Yes.

"Q. And opinions which you've just expressed regarding Renay Vickers, are they with reasonable medical certainty?

"A. Yes."

We further note that the following exchange occurred following Hessing's deposition testimony regarding the degree of impairment the plaintiff has suffered:

"Q. You've expressed a number of opinions, medical opinions, today, and I just want to be clear for the record. Are the opinions that you offered today within reasonable medical certainty?

"A. Yes."

As we noted above, citing *Struckman* v. *Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987), reasonable medical probability does not depend on the semantics of the expert or his use of any particular term or phrase, but is determined by looking at the entire substance of the expert's testimony. The exchanges set forth previously indicate that Hessing's testimony was given with reasonable medical certainty.

letter is in evidence is sufficient and I'll allow the testimony. You may have an exception."

The trial court has wide discretion in ruling on the admissibility of the opinions of expert witnesses. *State v. Douglas,* 203 Conn. 445, 452, 525 A.2d 101 (1987). The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. Id. The essential facts on which an expert opinion is based are an important consideration in determining the admissibility of his opinion. Id. In the present case, the trial court determined that Hessing's medical report, stating his opinion regarding the plaintiff's knee injury and its cause, established a sufficient factual foundation for the presentation of the doctor's deposition testimony. We cannot conclude, on the basis of our examination of the record, that the trial court abused its discretion or misapplied the law in admitting the deposition testimony of Hessing.

## II

The defendant next claims that the trial court improperly allowed into evidence certain medical opinions of Hessing that were not in the medical report. We are not persuaded.

The defendant claims that even if the medical report by Hessing provided a sufficient foundation for the surgeon's testimony regarding the causal relationship between the plaintiff's knee condition and the accident with the defendant, the court improperly allowed Hessing to express certain opinions regarding matters that were not discussed in the report, or any other report that had been admitted into evidence at the time of his testimony. Specifically, the defendant challenges Hessing's testimony regarding whether the automobile accident could have aggravated a degenerative disc, and

whether the plaintiff would need to undergo a knee operation known as a lateral release.

The defendant claims that because the issues of an aggravated degenerative disc and a lateral release were not mentioned in Hessing's medical report, there was no foundation laid for his testimony on those issues. We disagree. The trial court ruled that Hessing's medical report provided a sufficient foundation to show that his opinions were given with reasonable medical certainty. The report establishing a foundation is not required to mirror the opinion testimony of the expert; it merely had to provide a factual basis for the deposition testimony. The defendant's claim is therefore without merit.

## III

The defendant next claims that the trial court improperly excluded from evidence certain prior statements by the plaintiff concerning her injuries. We disagree.

The following additional facts and procedural history are pertinent to the resolution of this issue on appeal. In the February, 1988 accident involving the plaintiff and the defendant, the plaintiff received injuries to her knees, neck and teeth. In 1989, the plaintiff was involved in a subsequent accident in which she reinjured her knees, and aggravated some of the injuries that had resulted from the 1988 accident. In response to discovery requests, counsel for the plaintiff submitted to counsel for the defendant all bills relating to injuries to the patient's knees in the 1988 accident. In November, 1989, the plaintiff wrote a letter to the insurer of the other party in the 1989 accident claiming medical expenses for the reinjury to her knees and aggravation of some of the injuries she had incurred in the 1988 accident.

At trial, counsel for the defendant attempted on three occasions to have the plaintiff's 1989 letter to the insurance carrier of the other party in the 1989 accident admitted into evidence. The first time the defendant attempted to submit the letter, counsel for the plaintiff objected on the ground of hearsay. The objection was sustained. Later, counsel for the defendant again attempted to submit the 1989 letter, claiming that the letter was a "statement of a party opponent," and an "admission of her medical bills." The trial court ruled, "She hasn't denied the amount of the bill. I won't allow it in. [Objection sustained]." As counsel for the defendant tried for the third time to submit the 1989 letter, the following colloquy occurred:

"[Plaintiff's Counsel]: Your Honor, he's attempting to submit the same thing that Your Honor excluded just about—

"[Defendant's Counsel]: There's a basis for it now. She's stated that's it on her letterhead. She wrote it; she signed it.

"[The Court]: Sustained.

"[Defendant's Counsel]: Your Honor, I would take exception to your ruling.

"[The Court]: What is the basis for [your] request?

"[Defendant's Counsel]: It's an admission of a party opponent, and it's also a prior inconsistent statement.

"[The Court]: She said she didn't submit those bills?

"[Defendant's Counsel]: She did say she did.

"[The Court]: Well, that's not inconsistent.

"[Defendant's Counsel]: Well, it's inconsistent with her other statement over here.

"[The Court]: It's not inconsistent with the testimony on the stand. It may not go in. She testified she submitted those bills. It's not inconsistent."

The trial court made a factual determination regarding the substance of the November, 1989 letter and the plaintiff's testimony on the witness stand. The court determined that the substance of the letter was not inconsistent with her testimony. On the basis of that factual determination, the trial court declined to admit the letter into evidence under the prior inconsistent statement exception to the hearsay rule.[2] "The principle is well settled, even where the case . . . is a jury case, that where the admissibility of evidence depends upon a preliminary question of fact, to be determined by the court, its decision is not to be reversed unless there is clear and manifest error." *Engelke* v. *Wheatley,* 148 Conn. 398, 410–11, 171 A.2d 402 (1961). In the present case, the trial court's ruling on the admissibility of the letter turned on whether it contained a statement inconsistent with the plaintiff's position at trial. The trial court determined that it was not inconsistent, and properly ruled that the letter was inadmissi-

---

[2] We note that it has long been the rule in Connecticut that, in civil actions, to "qualify as an admission, a statement made by a party must be inconsistent with a position which he takes at trial." *State* v. *Villafane,* 171 Conn. 644, 674, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); see also *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 209, 140 A.2d 708 (1958); *Hill* v. *Small,* 129 Conn. 604, 605, 30 A.2d 387 (1943); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 15.5.1. Our Supreme Court created a narrow exception to this rule in the context of criminal cases in *State* v. *Stepney,* supra, 252–53. The *Stepney* court reiterated and explained the rule as it pertains to civil cases, writing: "In a civil case each party files pleadings which are conclusive as to matters admitted therein; *Hirsch* v. *Thrall,* 148 Conn. 202, 206–207, 169 A.2d 271 (1961); each may be required to submit to extensive pretrial discovery; Practice Book §§ 219–249; and each may be called to testify by the opposing party. A party's full position at trial is therefore readily ascertainable. Thus, a requirement that the proffered admission be contradictory with that position is not an obstacle to the admissibility of an admission in a civil trial." Id., 253. We note that with respect to civil proceedings in Connecticut, and as reiterated in *Stepney,* the rule requiring that an admission of a party opponent contradict a position taken at trial still stands.

ble. Our review of the record does not reveal "clear and manifest error" in the trial court's factual determination, and we therefore conclude that the trial court properly excluded the November, 1989 letter from evidence.

## IV

The defendant's final claim is that the trial court improperly refused to set aside the verdict, order a new trial, or order a remittitur. We disagree.

The trial court may set aside a jury verdict that the court finds to be contrary to the law or the evidence. *American National Fire Ins. Co.* v. *Schuss,* 221 Conn. 768, 774, 607 A.2d 418 (1992); *Palomba* v. *Gray,* 208 Conn. 21, 22–23, 543 A.2d 1331 (1988); *Cohen* v. *Hamden,* 27 Conn. App. 487, 491, 607 A.2d 452 (1992). Unlike this court, the trial court had the same opportunity as did the jury to view the witnesses, to assess their credibility, to determine the weight that should be given to their evidence and to gauge the tenor of the trial. *Caciopoli* v. *Acampora,* 30 Conn. App. 327, 331, 620 A.2d 191 (1993). "If the trial court finds that the verdict is so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside the verdict. . . ." (Citations omitted; internal quotation marks omitted.) Id., quoting *State* v. *Hammond,* 221 Conn. 264, 268, 604 A.2d 793 (1992). A verdict, however, should not be set aside where the jury reasonably could have based its verdict on the evidence. *American National Fire Ins. Co.* v. *Schuss,* supra, 774.

The defendant asserts that the jury's awards to the plaintiff for past and future economic damages were excessive and not based on the evidence. The jury awarded the plaintiff a total of $71,500 for past and future economic damages. At trial, the plaintiff pre-

sented evidence of past economic damages totaling $15,403.03. Hessing testified that the plaintiff would need knee surgery costing between $9000 and $10,000. A report by Michael O'Brien, a neurologist, was also presented. According to O'Brien, the plaintiff will require treatment and therapy for an indefinite period of time. O'Brien wrote that he saw patients such as the plaintiff once a month, or once every two to three months when their conditions were more stable at the rate of $60 per visit. He noted that he would prescribe medications that would cost a total of $120 per month, $60 for anti-inflammatory medications, and $60 for pain medications. O'Brien wrote that he would prescribe physical therapy at the rate of $30 to $60 per visit as often as once a week during acute periods of discomfort or as infrequently as once a month during less acute phases. O'Brien also wrote that he would enroll the plaintiff in a physical education program where she would receive outpatient therapy. The program would cost $50 to $100 a month, and O'Brien concluded that the plaintiff should continue the program on an "indefinite basis." O'Brien concluded, "I would consider this woman's problem to be permanent at this time with a very poor prognosis for full recovery. This is much in keeping with what the literature states on patients who are injured in this fashion." Evidence was presented indicating that the plaintiff's life expectancy is 26.7 years. In addition, another physician reported that TMJ surgery is required at a cost of up to $10,000.

During oral argument on the defendant's motion to set aside the verdict, the trial court concluded that the jury could have arrived at $71,500 in damages partially on the basis of the O'Brien report. The trial court calculated that even if the plaintiff did not suffer from an acute phase of her ailments, and was treated only as O'Brien suggested appropriate to the stable phase, the jury could have calculated an $80,000 award. The

defendant now claims that the trial court improperly concluded that the jury had a reasonable basis for making the award because the report showed that "Dr. O'Brien believed that the plaintiff would have an acute phase of treatment and a stable phase of treatment [and his] report does not state that the plaintiff would remain in any one phase indefinitely."

The defendant is correct in pointing out that O'Brien's report does not reveal his opinion as to how long the plaintiff is likely to remain in any one phase. The defendant, however, ignores the doctor's conclusion that the plaintiff's prognosis is poor for a full recovery, and that she will need some form of treatment indefinitely. The trial court, therefore, correctly concluded that the jury had a reasonable basis for awarding $71,500 for past and future economic damages.

The defendant also claims that the jury's awards for noneconomic damages were excessive and not supported by evidence. The jury awarded the plaintiff $125,000 for noneconomic damages.

Damages may be awarded for pain and suffering, past, present and future, resulting from the injuries as long as the evidence affords a basis for a reasonable estimate by the trier of fact of the amount. *Vajda* v. *Tusla,* 214 Conn. 523, 532, 572 A.2d 998 (1990). An award of damages for pain and suffering is peculiarly within the province of the trier of fact and the fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery for that element of damages. Id., 533; *Manning* v. *Michael,* 188 Conn. 607, 616, 452 A.2d 1157 (1982); *Sadonis* v. *Govan,* 132 Conn. 668, 670, 46 A.2d 895 (1946). Not only are damages for pain and suffering peculiarly for the trier of fact, but proper compensation for pain and suffering cannot be computed by a mathematical formula, and there is no ironclad rule for the assessment of damages.

*Vajda* v. *Tusla,* supra, 533, citing *Manning* v. *Michael,* supra. The award of damages for pain and suffering "will be sustained, even though generous, if it does not shock the sense of justice." *Campbell* v. *Gould,* 194 Conn. 35, 40, 478 A.2d 596 (1984).

A review of the evidence presented at trial shows that the plaintiff was involved in a serious automobile accident when the car in which she was riding was struck by a car driven by the defendant, left the road, and rolled over. She had to be extricated from the vehicle. The plaintiff suffered injuries to her knees, face, and teeth that continue to require extensive medical treatment. She presented evidence establishing that she has suffered 15 percent impairment to her whole person based on 20 percent impairment in each lower extremity. In the face of this evidence, the jury could have reasonably awarded the amount that it did. There is nothing in the record indicating that the jury was influenced by partiality, prejudice, sympathy or mistake. The trial court properly denied the defendant's motions to set aside the verdict or order a remittitur.

The judgment is affirmed.

In this opinion the other judges concurred.