[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUN OF DECISION
CT Page 12565
The decedent plaintiff alleges in an amended complaint dated May 3, 1999 that he sustained personal injuries, pain and suffering, and medical expenses as a result of the negligence of the defendant Stop Shop Company. Specifically, the plaintiff claims that on July 13, 1996 he slipped and fell at the Stop 
Shop food store located at 211 High Street in Torrington, Connecticut. He alleges his fall was caused by an accumulation of water on the floor in an area where public telephones are located.
In the May 6, 1999 answer and special defenses the defendant denies negligence and asserts that the plaintiff's injuries were proximately caused by his own contributory negligence.
The case was tried to the court on May 13, 1999. The parties introduced as evidence the deposition transcript of the plaintiff as well as other sworn testimony of witnesses and numerous exhibits. A stipulation of facts dated May 13, 1999 was also presented to the court. In June 1999, the parties filed their post-trial briefs and proposed findings of fact.
 Facts
The defendant has admitted to numerous paragraphs of the plaintiff's complaint. The admissions are set forth below:
1. At all times mentioned herein the plaintiff, Christian Marino, Sr., was a resident of the Town of Torrington, County of Litchfield and State of Connecticut. Mr. Marino died on November 17, 1998 and Cheryl Marino of 112 Mill Lane, Torrington, Connecticut was appointed fiduciary of the Estate of Christian Marino, Sr.
2. At all times mentioned herein the defendant, Stop Shop Company, was and is a corporation organized and existing pursuant to the laws of the Commonwealth of Massachusetts and was and is authorized to do business in the State of Connecticut.
3. At all times mentioned herein the defendant, Stop Shop company, was, and for some time prior had been, engaged in the business of the retail sale of food and other goods to the public and, in furtherance of said business, the defendant owned, operated and maintained a chain of stores in many cities. CT Page 12566
4. The defendant owned, operated and maintained one such store, Stop Shop, located at 211 High Street, Torrington Commons, Torrington, Connecticut, at which location the events giving rise to this action occurred.
5. At all times mentioned herein the defendant, through its chain of stores, including the Stop Shop located at 211 High Street, Torrington, Commons, Torrington, Connecticut, was a retail store which advertised to the public, which premises were open to the public and over which premises the defendant had control and invited the public to come in and shop as business invitees.
The parties have stipulated to the following facts:
1. The plaintiff, Christian Marino, Sr. was born on February 19, 1926 and died on November 17, 1998.
2. The plaintiff, Christian Marino, Sr. and his Estate are not making any claim for lost wages or the impairment of his earning capacity as a result of the occurrence of July 13, 1996.
3. The period of pain and suffering claimed in this matter begins on July 13, 1996 and ends on November 17, 1998.
4. The primary medical care provider for the plaintiff for the injury in the above entitled matter was Jay L. Abbott, M.D. of 7 Felicity Lane, Torrington, Connecticut. He is an orthopedic surgeon. Dr. Abbott was also the major medical care provider in a prior claim for injuries to the same area of the body that occurred on April 13, 1996. Dr. Abbott gave an opinion on permanency and attributed portions to each occurrence.
6. The following medical reports and hospital reports generated from both occurrences may be entered into evidence whether originals or copies and whether signed or not signed or subpoenaed from hospitals:
A. Medical reports of Jay L. Abbott, M.D. dated July 15, 1996 and July 22, 1996;
B. Medical reports of Jay L. Abbott, M.D. dated August 5, 1996 and September 9, 1996; CT Page 12567
C. Medical report of Jay L. Abbott, M.D. dated January 15, 1997;
D. Medical report of Jay L. Abbott, M.D. dated April 23, 1997;
E. Medical report of Charlotte Hungerford Hospital dated July 13, 1996;
F. Medical report of Mary Lynn Newport, M.D. of John Dempsey Hospital dated March 20, 1997;
G. Medical reports of Maletta Pfeiffer, RPT dated August 6, 1996 through September 12, 1996;
The following medical bills which the plaintiff attributes to the occurrence that is the subject matter of this lawsuit may be entered into evidence. They are:
A. Medical billing of Champion Ambulance dated July 13, 1996 in the amount of $218.00;
B. Medical billing of Jay L. Abbott, M.D. dated July 15, 1996 through January 15, 1997 in the amount of $670.00;
C. Medical billing of Maletta Pfeiffer, RPT dated August 13, 1996 through September 12, 1996 in the amount of $873.00;
D. Medical billing of John Dempsey Hospital dated March 20, 1997 in the amount of $236.71;
The plaintiff and the defendant stipulate that the medical bills incurred are reasonable.
In addition, the court finds that the following additional facts have been proven. During the morning hours of July 13, 1996, the plaintiff entered the Stop Shop store located at 211 High Street, Torrington, Connecticut. The weather had produced heavy rain throughout the entire morning. While in the store, the plaintiff decided that he would use a public pay phone to call his mother in order to ascertain whether she needed groceries. The phones are located in close proximity to the entrance and exit doors and in the vicinity of the pharmacy. The floor covering in this area is polished tile. After making the call, the plaintiff walked a short distance from the phones when he CT Page 12568 slipped and fell. At the location where the fall took place, the floor was wet. Moisture caused the floor to be slippery. The wet area was approximately six to seven feet in diameter. The incident occurred sometime between the hours of 10:00 a.m. and 11:45 a.m. As a result of the fall, the plaintiff landed on the floor. The moisture on the floor was sufficient to cause his clothing to become wet. Jones Evallone, a retired firefighter and emergency medical technician was a witness to the events following the slip and fall. He testified at trial as to his observations:
 A: I noticed or observed that Mr. Marino was right by the exit door where the pay phones were and he fell and striking his right side, I think — yeah, right side. And he was laying there on the ground and nobody was coming to help him and I went to his aid.
 Q: Let me stop you there. When you got there, what did you find, what did you do?
 A: I found that his — there was an obvious deformity in his arm and I cradled his arm and tried to find something to make a splint out. There was nothing available so I cradled his arm and until the ambulance got there. And I was kneeling down on the floor and —
Q: Let me stop you there. Was the floor dry?
 A: No, it was wet. I was kneeling with my left leg down and it was completed soaked. And I noticed that Mr. Marino was wet also.
 Q: Were there any rugs there or mats, whatever you want to call them.
A: No, there weren't.
 Q: How about those cones, those orange cones and yellow cones?
A: No, nothing.
(Trp. pp. 12-13).
In addition, Mr. Evallone expressed his opinion on the size CT Page 12569 of the floor area affected by the moisture. He stated "I would say six to seven feet in diameter because that would be about the area that he was lying in and I was kneeling in." (Trp. p. 15). Mr. Evallone did acknowledge that he observed a floor mat at the entrance to the store. The testimony of Mr. Evallone concerning the absence of mats and cones in the area of the telephones is in contradiction to a Stop Shop "Report of Incident or Injury" dated July 13, 1996 which indicates in part that "[f]loor was moist by entrance, cones, and rugs in place." (Def. Exh. 1). The author of the report did not testify at trial. The court is of the opinion that the better evidence produced at trial demonstrates that there were no mats or cones at the location of the fall. The evidence also demonstrates that the plaintiff did not contribute to, or cause, his slip and fall.
The plaintiff was transported by ambulance to Charlotte Hungerford Hospital emergency room where he was treated and released. Dr. Peter Biell, the physician in attendance, noted in the plaintiff's medical record the following:
 Objective Findings: He has minimal tenderness over the right trapezius muscle well localized to the muscle with no bony tenderness of the shoulder, clavicle or cervical spine. Wrist pulses were intact, hand grip was good. No wrist tenderness. He had generalized tenderness with palpable effusion of the right elbow. There is no break in the skin. Sensory exam is grossly normal.
 Diagnostic Tests and Interpretations
A B G/PULSE OXIMETRY:
 X — RAY: X-ray of the right elbow revealed avulsion of a previously fractured segment of the right radial head when compared to his post injury x-rays from 3 months ago. No new injuries were noted other than avulsion of the previously fractured segment.
 Medical Decision Making: The differential diagnosis includes recurrent injury of the right elbow, consideration of ligamentous injury. His x-ray revealed avulsion of the previously fractured non displaced segment of the radial head.
 Clinical Impressions
CT Page 12570
DX 1: Fractured right radial head (recurrent).
(Pl. Exh. 3).
The reference in Dr. Biell's report to recurrent injury relates to a fall which occurred on April 13, 1996 on the sidewalk outside of the same Stop Shop food store.[1] Dr. Jay L. Abbott, an orthopedic surgeon, treated the plaintiff for injuries sustained in both falls. He reported that the injuries sustained from the April accident included "a contusion of the left hand, sprain of the right ankle, and fracture of the right radial head [elbow]". (Def. Exh. 4, 4/15/96 entry)
The last time Dr. Abbott examined the plaintiff prior to the July 13, 1996 fall was June 5, 1996. Dr. Abbott's findings were as follows:
 "This man is finally having less neck and shoulder pain. Both hands still bother him and he has occasional numbness and tingling at night on the right side. He feels that his elbow is improving satisfactorily and upon examination, he has an excellent range of motion of his right elbow. There still is tenderness over the thenar eminence bilaterally, more marked on the right than the left. There is no definite Tinel's sign.
 An x-ray shows no change in position of the radial head fracture. This appears to be healing satisfactorily. He is to progress his activity and re-check here in three months for a final discharge statement."
(Pl. Exh. 1)
Dr. Abbott rated the plaintiff's permanent partial disability to his elbow as "10% from the initial injury [April 1996] and 5% from the subsequent injury which occurred on July 13, 1996" (Pl. Exh. 1).
 DISCUSSION A. Negligence
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and CT Page 12571 actual injury." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384, 650 A.2d 153 (1994). "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative, to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual" (Internal quotation marks omitted.) Lodge v. Arett Sales Corp.,246 Conn. 563, 571, 717 A.2d 215 (1998).
In determining whether a duty exists, "the threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." Id., 572 n. 7. "In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee. . . . A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . ." (Citations omitted.) Morin v. Bell Court CondominiumAssociation Inc., 223 Conn. 323, 327, 612 A.2d 1197 (1992).
If the duty to maintain the premises in a safe condition is breached and "if the defendant had actual or constructive notice of the defect within a reasonable time to remedy it, the plaintiff would be entitled to recover damage for his injuries. . . ." (Citation omitted.) Gulycz v. Stop Shop Cos.,29 Conn. App. 519, 521, 615 A.2d 1087, cert. denied,224 Conn. 923, 618 A.2d 527 (1992). "Whether the defendant had constructive notice of this condition turns on whether the condition existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it. . . . While an abundance of evidence is not necessary to show a sufficient length of time existed for discovery of the condition . . . some evidence is required. . . . Where some evidence has been submitted, what constituted a reasonable length of time becomes a question of fact to be determined on the basis of the circumstances of the case. . . ." (Citations omitted.) Id. "[C]ircumstantial evidence can establish constructive notice. . . ." Id., 522.
The duty applicable in the present case is that of a business owner to a business invitee. The plaintiff, as a consumer, was a business invitee of the defendant Stop Shop. The defendant therefore had a duty to inspect and maintain the premises in a safe manner. The court finds that the defendant failed to maintain the premises in a safe condition based on numerous CT Page 12572 facts, including: the plaintiff's deposition testimony that it had been raining all morning but that the defendant failed to place any cones or mats at the location of the fall; that the wet floor caused him to fall; and that after the fall his backside was all wet. Additionally, Mr. Evallone, the person who came to the plaintiff's aid, testified that there were no cones or mats to safeguard against slippery conditions; that in the course of rendering aid to the plaintiff, his left leg, the leg upon which he knelt down, was completely soaked; and that through rendering aid he noticed the area of wetness to be approximately six to seven feet in diameter. Thus, the court finds that the store had a duty to the plaintiff as a business invitee and it breached that duty by failing to inspect and maintain the premises in a reasonably safe condition.
The facts in the present case also establish constructive notice. As previously indicated, the plaintiff testified at his deposition that it had been raining all morning. During inclement weather customers naturally track water into stores. This section of the store contains public pay phones. The area of wetness was approximately six to seven feet in diameter. Both the plaintiff and Mr. Evallone became significantly wet as a result of the incident. In order for the wet area to be that size, it is reasonable to conclude that there had been sufficient time for water to accumulate. The defendant's employees had a duty to provide greater attention in terms of inspection and maintenance to the condition of the floors on the day in question. Accordingly, the facts establish that the defendant had constructive notice of the slippery area.
The defendants argue by way of special defense that the plaintiff was contributorily negligent in causing his injuries. The evidence does not establish that the plaintiff caused or contributed to the slip and fall.
The defendant had a duty to inspect the area and maintain the premises in a safe condition. The defendant breached its duty of care and the court finds that the defendant was negligent. The plaintiff has sustained his burden for this cause of action in negligence.
 B. Damages
Having determined that the plaintiff sustained the burden of proving the negligence of the defendant, the court finds that the CT Page 12573 plaintiff is entitled to fair, just and reasonable damages for his medical expenses and pain and suffering.[2] "The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case. . . ." (Citation omitted; internal quotation marks omitted.)Campbell v. Gould, 194 Conn. 35, 39, 478 A.2d 596 (1984). "The award of damages for pain and suffering will be sustained, even though generous, if it does not shock the sense of justice. . . ." (Citation omitted.) Vickers v. Jessup, 32 Conn. App. 360,373, 629 A.2d 457, cert. granted, 227 Conn. 922, 632 A.2d 701
(1993). The amount of compensation is properly determined by the trier. Campbell v. Gould, supra, 194 Conn. 40. "[T]here is no iron-clad rule for the assessment of damages. . . ." (Citation omitted.) Id.
The court finds that the plaintiff is entitled to economic and noneconomic damages. In terms of economic damages, the plaintiff is entitled to recover for medical expenses reasonably incurred for treatment necessitated by the plaintiff's injuries. The plaintiff's medical expenses proven to be attributable to the July 1996 injury total $888.00.
Additionally, the plaintiff is entitled to noneconomic damages for pain and suffering. The plaintiff suffered a five percent permanent partial disability. Moreover, as a result of this fall the plaintiff suffered numbness in his right hand which limited his ability to enjoy life's activities. His pain and suffering lasted for more than two years prior to his death. The court awards the plaintiff $4400.00 in noneconomic damages.
Accordingly, the court finds that a total award of $5288.00 is fair, just and reasonable compensation.
 CONCLUSION
The court finds for the plaintiff in the amount of $5288.00 plus costs.
PETER E. WIESE, J.